**548**    SUPREME COURT OF MISSOURI,

Wayland v. The St. Louis, Kansas City & Northern Railway Company.

WAYLAND v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY, *Appellant.*

1. **Nuisance**: LIABILITY OF PURCHASER. A purchaser of land, while not liable for damages caused by the erection of a nuisance on the land before his purchase, is liable for those caused by its continuance after the purchase and after he has knowledge of it; but he is not liable for either the erection or continuance of a nuisance created by his vendor before the sale, on adjoining land.

2. **Case Adjudged.** A railroad company, for the purpose of draining a lake into an adjacent river, connected the two by a ditch dug for the most part on its right of way, but where it emptied into the river on land of another. When the water in the river was high, it ran through the ditch into the lake and flooded the adjoining country. If no part of the ditch had been dug, except so much as was outside the right of way, the same thing would have happened. If no part had been dug except what was on the right of way, it would not have contributed to the overflow. The company which dug the ditch sold its right of way and other property to another company, and after the sale the lands of an adjoining proprietor were damaged by an overflow from the river. In an action against the latter company to recover the damage; *Held,* that it was not liable.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

*Wells H. Blodgett* for appellant.

The action is to recover damages for making and maintaining a ditch which injuriously affected the plaintiff's land. The evidence is, that defendant did not make the ditch, and, hence, there need be no discussion of its liability for the making of it, and thereby committing a trespass or creating a nuisance. The only question is, whether, under the facts in the case, the defendant is legally responsible for maintaining or continuing a nuisance, to abate which it would be compelled to commit a trespass by going upon the lands of another and filling up the ditch. This question must be answered in the negative. *Kansas Pacific R'y Co. v. Mihlman*, 17 Kas. 224. If the North Missouri Railroad Company entered upon the lands of an adjoining owner and without permission dug a ditch, then the North Missouri Railroad Company was responsible in an action of trespass for all damages naturally resulting from such an act. If in consequence of the ditch, the lands of a third party were injuriously affected, the duty of abating the nuisance by filling up the ditch would devolve upon the owner of the land, and not upon the North Missouri Railroad Company, who to remedy one wrong would have to commit another. *Clegg v. Dearden*, 64 Eng. Com. L. 600.

*Bell, Huston & Mullins* for respondent.

The railroad company had no right to divert the water of the river from its natural channel. Angell on Watercourses, (7 Ed.) § 97 ; *Parker v. Griswold*, 17 Conn. 299 ; *McCord v. High*, 24 Iowa 336 ; or to flood the plaintiff's

land without his consent. *Moffett v. Brewer*, 1 G. Greene (Iowa) 348; *Brown v. R. R. Co.*, 12 N. Y. 486; *Young v. R. R. Co.*, 28 Wis. 171; *Vedder v. Vedder*, 1 Denio 257; *Pinney v. Berry*, 61 Mo. 359; *Rose v. St. Charles*, 49 Mo. 509.

HENRY, J.—This suit was for the recovery of damages to plaintiff's land, occasioned by an overflow of the same with water from the Chariton river, alleged to have been caused by ditches dug by defendant in the construction of its road, to drain a lake into said river.

The following is the petition: "Plaintiff states that defendant is a duly incorporated railroad company under the laws of this State, and was so incorporated at the time of committing the grievances hereinafter stated. Plaintiff further states that the railroad track and bed of defendant crosses the middle fork of the Chariton river in the north half of the northeast quarter of section 1, township 53, range 17, in the county of Chariton aforesaid, and that on the west side of said river and on said quarter section of said land defendant caused to be constructed and maintained in the year 1872, and has continued, ever since said time, to maintain certain ditches of large capacity, to be dug and kept open on the north and south sides of said track, where the same crosses said river as aforesaid, whereby the natural flow of the waters of said river has become diverted from their natural channel, and caused the waters of said river to overflow and submerge certain lands belonging to and which have belonged to plaintiff ever since the year 1872, which lands are known as the northwest quarter of section 12, township 53, range 17, in said county of Chariton, and that said lands were valuable for farming purposes, but by reason of the overflow caused by the diversion of said river from its natural channel by means of said ditches maintained by defendant as aforesaid, the said lands have become wholly worthless, and that by reason thereof, the plaintiff, for the years 1873, 1874, 1875,

1876, 1877 and 1878 has been wholly deprived of the use of said lands for any farming purposes whatever. All of which said facts defendant well knew, wherefore plaintiff says he has been damaged in the sum of $1,500, for which he asks judgment."

The plaintiff's testimony established the following facts: In the fall of 1866, and the winter of 1867, the North Missouri Railroad Company, defendant's predecessor, dug two ditches. One of these ditches was on the north and the other on the south side of the railroad. The main body of the water comes on to plaintiff's land through the north ditch, and that ditch connects with the river about fifty feet from the right of way, on land never owned by the defendant or the old North Missouri Railroad Company. When the ditches were dug by the North Missouri Railroad Company, they were so small that one could step across them, and in that condition would have occasioned no injury to plaintiff's land, but the water from the river and the lake, running through, widened and deepened them until at the trial of the cause, they were twenty or thirty feet wide and eleven or twelve feet deep. The defendant began operating the road in 1872, and has never done anything to widen or deepen the ditches, but in 1877, attempted to close them up. The ditch on the south side, plaintiff testifies, was not dug to drain the lake, and is over thirty feet from the right of way of the company. He also stated that " as the north ditch was originally built it would have done my land no injury, unless the creek had staid up a long time. The damage I complain of was caused by the ditch getting larger every year; every rise in the creek made it larger." He further states that in 1874 or 1875, the defendant cut down the bank of the river, two or three feet for a distance of twenty feet where it built a bridge over the creek. The water that came out under the bridge ran into the big ditch, and after that, into the lake, and from the lake into the bottom. All the evidence tends to show that plaintiff's injury was occasioned by the north

ditch, except that of plaintiff with respect to the lowering of the bank of the creek by defendant where the bridge was erected.

The court, for plaintiff, gave the following instructions to the jury :

1. Although the jury may believe from the evidence that plaintiff's land may have been subjected to overflow, and that it would have been overflowed during the years named in the petition by the waters of the creek getting out over their banks, even if there had been no ditches at the point where the railroad crossed the creek, yet, if they further find that, after notice or knowledge of the injury caused by the ditches on defendant's right of way, defendant maintained or permitted such ditches to remain open, or insecurely or insufficiently closed, and that thereby plaintiff's land was overflowed sooner, and water remained on it longer, or the quantity of water on it was increased, or it was turned upon his land at a different place or in a different manner from what it would have naturally flowed, then their finding should be for plaintiff.

2. Notice to defendant's chief engineer was notice to defendant.

3. If the jury find for plaintiff they should allow him for all injury, if any, to the rental value or use of his land resulting from its overflow by defendant by reason of the ditches on its right of way, after defendant had notice or knowledge of such overflow up to the time when this suit was brought; not, however, exceeding in all the sum of $1,500.

4. Although the jury may believe from the evidence that the middle fork of the Chariton did annually overflow its banks and submerge the lands of plaintiff, mentioned in the petition, before defendant's road was built, yet, if they further believe from the evidence that in consequence of ditches which may have been cut by the North Missouri Railroad Company on its right of way, said lands were submerged for a longer period of time, and that said lands,

in consequence of such length of overflow, were injured as a pasture, the jury should find for plaintiff such damages as may have occurred to said lands from said cause after defendant had notice of such injury, not exceeding $1,500.

At the request of the defendant, the court instructed the jury as follows, to-wit:

2. If the jury believe from the evidence that the lands of plaintiff were flooded and rendered valueless by extraordinary rain-falls or by extraordinary rises and freshets in Middle Fork, causing its waters to escape its banks, and spread out generally over the surrounding country, then the jury are instructed that they must find for defendant for such years as they may believe from the evidence such extraordinary floods or rain occasioning such damage occurred in.

3. Unless the jury believe from the evidence that the ditches along the line of defendant's railroad upon its right of way were improperly constructed, and that plaintiff's damages were thereby occasioned, they must find their verdict for defendant.

4. If the jury believe from the evidence that the North Missouri Railroad Company, or its agents, in the year 1866 or 1867, cut a ditch through lands beyond its right of way to Middle Fork, then, although the jury may believe from the evidence that defendant, in the year 1872, purchased said North Missouri Railroad road-bed and right of way, and was the owner and in possession thereof in the years 1874, 1875, 1876 and 1877, they are nevertheless instructed that defendant was and is not authorized or required to fill up or change the construction of said ditch so made by the North Missouri Railroad Company beyond said right of way; and if the jury believe from the evidence that the waters of Middle Fork escaped its banks through such ditch alone, and plaintiff's damages were solely occasioned thereby in said years, then they are in-

structed that plaintiff cannot recover therefor in this action, and the verdict must be for defendant

5. The North Missouri Railroad Company and the defendant had the right to dig ditches along the line of the railroad, for the purpose of draining their right of way or protecting their road-bed, and might lawfully connect, by suitable ditches, the slough over which the road passed, with the river or creek in question; and if the jury believe from the evidence that the ditches made by the North Missouri Railroad Company in the year 1867 or 1868, within its right of way, were so connected with the river or creek in question as to occasion no damage and were then skillfully made, and if the jury believe from the evidence that they were not afterward deepened or enlarged by said North Missouri Railroad Company or defendant, but that in sole consequence of the action of the waters of said river upon the ditches, they had become enlarged or deepened, and in consequence thereof the waters came in the years 1874, 1875, 1876 and 1877 through said ditches upon the lands of plaintiff and occasioned his damages, then the jury are instructed that plaintiff cannot recover, and the verdict must be for defendant.

6. Unless the jury believe from the evidence that defendant knew, prior to the date of the grievances complained of, or some of them, that the ditches upon its right of way were improperly or negligently constructed, and brought the water upon the land of plaintiff to his damage, or unless they believe from the evidence that prior to the date of said grievances, or some of them, the plaintiff or his agent gave defendant or its authorized agent, notice that his lands were flooded and damaged in consequence of the construction of said ditches upon its right of way, they are instructed that they must find their verdict for defendant.

Defendant prayed the court to instruct the jury as follows, to-wit:

1. If the jury believe from the evidence that in the

years 1874, 1875, 1876 and 1877, the lands of. plaintiff were flooded from the overflowing waters of Middle Fork, escaping from the banks of said stream and spreading out generally over the surrounding country, and were thereby rendered valueless for farming purposes or pasturage, or if they believe from the evidence that said lands were flooded and rendered valueless for pasturage or farming purposes by heavy rains, or if they believe from the evidence that said lands were flooded and rendered valueless as aforesaid by a union of both of said causes, then they are instructed that plaintiff cannot recover, and the verdict must be for defendant.

2. If the jury believe from the evidence that defendant's land was overflowed at the times charged, by waters escaping from the middle fork of the Chariton river, through the ditch on the north side of the railroad, where the same crosses the middle fork of said river, and if the jury further believe that said ditch, where it connects with said middle fork, was dug outside of defendant's right of way, before the 2nd day of January, 1872, and before defendant. purchased or became the owner of said railroad, then and in that event the court instructs the jury that defendant had no right and was under no obligation to go outside of said right of way to stop up said ditch or obstruct the flow of water escaping therefrom, and is not responsible for any damage to plaintiff's land occasioned thereby, and the jury will find for defendant.

3. If the jury believe from the evidence that the land of plaintiff would have been flooded in the years 1874, 1875, 1876 and 1877, and the grass destroyed or the lands rendered valueless, independent of the construction of the railroad and ditches, then they are instructed that plaintiff cannot recover, and the verdict must be for defendant.

These instructions were refused. There was a verdict for plaintiff for $250 damages, and a judgment accordingly, from which defendant has appealed.

If one purchase land from another, on which the latter

has erected or maintained a nuisance, while not liable for the erection of the nuisance, he is liable for all damages sustained by another after he has knowledge thereof. *Dickson v. C., R. I. & P. R'y Co.*, 71 Mo. 575 ; *Pinney v. Berry*, 61 Mo. 359. But if the former owner has erected a nuisance on lands not his own, one purchasing his lands is not liable, either for the erection or continuance of such nuisance. Here, those portions of the ditches dug by the North Missouri Railroad Company, which were on its right of way, could by no possibility have injured the plaintiff's land, if the bank of the creek had not been cut down to let the water from the lake into the creek. But for that connection the ditches dug on defendant's right of way would in proportion to their width and depth, have diminished the quantity of water which would have gone on to plaintiff's land from an overflow of the creek. If the North Missouri Railroad Company, without digging a ditch, had cut down the bank of the stream, precisely as it did where the ditch it dug connected with the stream, the ultimate results to plaintiff's land would have been the same as those he now complains of.

The evidence that this defendant cut down the bank of the creek to erect its bridge, and that, in consequence thereof, the volume of water which ran over plaintiff's land from an overflow of the creek, was increased, was inadmissible, and furnished no ground of recovery. It was not alleged as a cause of action in the petition. The only complaint that contains, relates to the two ditches dug by the North Missouri Railroad Company.

It follows that the second of defendant's refused instructions should have been given, and there is a manifest conflict between the plaintiff's first and defendant's fourth instruction given. The first of plaintiff's instructions, in effect, declares that it was defendant's duty to close the ditch both on its right of way and where it connected with the Chariton river. The fourth for plaintiff instructs the jury that, "if in consequence of ditches which may

have been cut by the North Missouri Railroad Company, on its right of way, said lands were submerged for a longer period of time, and said lands, in consequence of such length of overflow, were injured, etc., the jury should find for plaintiff such damages as may have occurred to said lands, from said cause, after defendant had notice of such injury.' There was no evidence to support that instruction. No witness testified that the ditches dug on the right of way would have injured plaintiff, but all the evidence proved that the injury was occasioned by those portions of the ditches which were beyond the right of way, and on land never owned by the defendant or the North Missouri Railroad Company. Not only was this the testimony of the witnesses, but the physical facts, which are not in dispute, conclusively demonstrate its truth. The land ascended from the bluff to the bank of the river, and was several feet lower at the foot of the bluff than the bank of the stream. Ditches dug on the right of way to receive the water of the lake and not communicating with the river, so far from increasing, would diminish the amount of water, which in an overflow of the creek would flow on to plaintiff's land.

*Brown v. Cayuga & Susq. R. R. Co.*, 12 N. Y. 487, is not in conflict with the views herein expressed, but only holds what is here conceded, that the successor to the title and possession of property, who omits to abate a nuisance erected thereon, by another, after notice to do so, is liable for the damage caused by its continuance. For the foregoing reasons the judgment is reversed and the cause remanded.