## SILVER v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Draw Bridge:** OBSTRUCTION OF NAVIGATION: ACT OF CONGRESS. A bridge company built a bridge over the Missouri river, under authority of an act of congress, which provided that such bridge should not interfere with the free navigation of the river, beyond what was necessary in order to carry into effect the rights and privileges granted by the act; that if built as a draw bridge it should be a pivot draw bridge with the draw over the main channel of the river at an accessible and navigable point, and with spans of certain length on each side of the pivot pier and that the piers should be parallel with the current. The bridge company built their bridge with two draw-rests, one above and the other

below the pivot pier and one hundred and forty feet distant from it. Afterwards the bridge company leased the bridge structure to the defendant. Three years after, plaintiff's boat, while attempting to go through. the draw during a high stage of water, was driven against one of the piers by the current and sunk. The plaintiff charged that the piers were not parallel to the current and that the draw-rests above the bridge caused a cross-current which drove the boat against the pier. *Held*, that if the bridge was so built that the piers were parallel to the usual and ordinary course of the current it was a sufficient compliance with the act, and this question was properly one for the jury.

2. —— : —— : WHEN LAWFUL STRUCTURE. Bridges built under and pursuant to the terms of an act of congress are lawful structures.

3. —— : —— : NUISANCE. An act of congress authorizing a partial obstruction of navigation will not, however, protect an impediment not contemplated by the statute, and any excess in the. exercise of the powers granted by which navigation is impaired becomes a nuisance *pro tanto*.

4. —— : RIGHT TO BUILD : ESSENTIAL PARTS OF. The declarations in an act of congress that the bridge should not interfere with the free navigation of the river beyond what was necessary to carry into effect the rights and privileges thereby granted, as well as the grant of the right to build the bridge, include the right to maintain such structures as are essential parts of it.

5. **Unlawful Bridge** : BURDEN OF PROOF. The burden of proof is on plaintiff to show that the bridge does not conform to the requirements of the law.

6. **Draw Bridge** : UNAUTHORIZED STRUCTURES. There being no evidence tending to show that the draw-rests were unauthorized structures, that issue should not have been submitted to the jury.

7. —— : NUISANCE : KNOWLEDGE OF BY LESSEE. The plaintiff, in order to recover, must show that defendant, who was a lessee of the bridge, had notice or knowledge of the fact that the piers of the bridge were not parallel to the current of the river ; but such notice or knowledge may be shown by facts and circumstances, and not necessarily by direct evidence. [BARCLAY, J., *dissenting.*]

8. —— : —— : JURISDICTION OF STATE COURT. When the act of congress under which a draw bridge was built provides that, where any litigation arises from any obstruction or alleged obstructions to the free navigation of the river, the case may be tried in the district court of the United States in which any portion of said bridge or obstruction touches, such provision does not divest the state courts of jurisdiction of such causes.

Silver v. The Mo. Pac. Ry. Co.

*Appeal from LaFayette Circuit Court.*—HON. RICHARD
FIELD, Judge.

REVERSED AND REMANDED.

*Wm. S. Shirk* and *Thos. J. Portis* for appellant.

(1) The circuit court erred in overruling defend-
ant's motion in arrest upon the first ground therein
stated. The district court of the United States had sole
jurisdiction over the subject-matter of this action. The
circuit court of Cooper county, and the other circuit
courts to which the same was taken by change of venue
had no jurisdiction. In the case of *Missouri River
Packet Co. v. Railroad*, 79 Mo. 478, the attention of
this court does not seem to have been called to the evi-
dent intention of congress, to give exclusive jurisdiction
in all cases such as this, arising under the act, to the
courts of original admiralty jurisdiction, viz.: The
district court of the United States. That case is not,
therefore, conclusive, and should be overruled. (2) The
court erred in overruling defendant's demurrer to the
plaintiff's evidence, at the close of plaintiff's case, and
in overruling defendant's motion for a new trial, upon
the eighth ground therein, that the verdict is not sup-
ported by the evidence. *First.* The sunken floats as
a cause of action was withdrawn by plaintiff and no
evidence offered in support thereof. *Second.* There
was no evidence, whatever, that the upper draw-rest
was not a necessary part of the bridge. Upon this alle-
gation there was a total failure of proof. *Third.* As
to the only remaining ground of recovery, viz.: That
the piers of the bridge were not built parallel with the
current of the river. The plaintiff introduced no evi-
dence, whatever, showing or tending to show that the
defendant, as lessee, managing and controlling said
bridge, ever had any notice, knowledge or information,

that the piers of said bridge were not built parallel with the current of the river. Nor does defendant's evidence disclose any such notice, knowledge or information on defendant's part. Without evidence establishing or tending to prove such notice, knowledge or information, the verdict cannot stand. *Pinney v. Berry*, 61 Mo. 359; *Dickson v. Railroad*, 71 Mo. 575; *Wayland v. Railroad*, 75 Mo. 548; *McGowan v. Railroad*, 23 Mo. App. 203; *Railroad v. Railroad*, 51 N. Y. 573; *Crommelin v. Coxe*, 30 Ala. 318; *Grigsby v. Water Co.*, 40 Cal. 396; *Nichols v. City of Boston*, 98 Mass. 39; *Johnson v. Lewis*, 13 Conn. 303; *Woodman v. Tufts*, 9 N. H. 91; *Snow v. Cowles*, 22 N. H. 296; *Pillsbury v. Moore*, 44 Maine, 154; *Dodge v. Stacy*, 39 Vt. 558; *Fowle v. New Haven Co.*, 107 Mass. 355; *Paper Co. v. Dean*, 123 Mass. 269; *Prentis v. Wood*, 132 Mass. 488; *Maenner v. Carroll*, 46 Md. 193; *Plumer v. Harper*, 14 Am. Dec., pp. 338–9 and 340–1. (3) And the mere fact that the piers may not have been built parallel to the current, and may not have so stood on the thirtieth day of June, 1883, is not in and of itself such notice or knowledge, as to render the defendant liable as lessee of said bridge. Said piers may have stood otherwise than exactly or even substantially parallel, and defendant yet be wholly ignorant of it. It must be shown that defendant had knowledge or notice that the piers did not stand parallel with the current and so constituted a nuisance. See authorities to point 2, *supra*, all of which are in point. (4) The court unquestionably erred in giving to the jury the first instruction given for the plaintiff. This instruction entirely ignores the question of notice or knowledge on defendant's part, but tells the jury that if the piers were not originally constructed parallel with the current, and that that fact caused the accident to plaintiff's boat, then the defendant, as lessee of said bridge, is liable, etc. Such is not the law. See authorities cited to second point, *supra*. (5) The court erred

in giving plaintiff's second instruction, and in refusing to give the fourteenth instruction prayed for by defendant. There was no evidence, whatever, on which to base said second instruction for the plaintiff. And there being no evidence that the up-stream draw-rest was not a necessary part of the bridge, the court should have withdrawn that matter from the consideration of the jury. It is impossible to tell whether the jury based their verdict on that allegation or not. At least it should not have been left an open question before them. *Nolan v. Shickle*, 3 Mo. App. 300 ; *Charles v. Patch*, 87 Mo. 451 ; *Hunt v. Railroad*, 89 Mo. 607. ( 6 ) And the third instruction given for the plaintiff is objectionable, not only for the same reason, but because it tells the jury that said draw-rest, even if necessary as a "protection" to the bridge, was still an illegal structure. ( 7 ) Plaintiff's fifth instruction should not have been given, and defendant's tenth and eleventh instructions which were refused should have been given. If the bridge was originally erected according to the act of congress, then the congress of the United States, by the terms of the enabling act, is the only power having authority to order it changed. And until so ordered to be changed, said bridge continues to be a lawful structure. Defendant, as lessee, is not liable for any change of the current of the river since the construction of the bridge, and until congress determines that it shall be changed they are authorized to use and maintain it.

*Cosgrove & Johnston* and *Draffen & Williams*, for respondent.

( 1 ) The court below had jurisdiction of this case. The act of congress authorizing the construction of the Boonville bridge did not confer exclusive jurisdiction upon the district court of the United States. This is no longer an open question. Act of Congress, approved May 11, 1872; *Packet Co. v. Railroad*, 79

Mo. 478; *Railroad v. Packet Co.*, 125 U. S. 260. (2) The burden is upon the party who maintains an obstruction to the navigation of a public river to show legal justification for so doing. *Packet Co. v. Railroad*, 1 McCrary, 281; *Railroad v. Railroad*, 37 Fed. Rep. 129. It is not necessary to allege or prove that notice of a nuisance has been given, provided you allege and prove knowledge of its continuing existence. *McGowan v. Railroad*, 23 Mo. App. 203. (3) Instructions numbers 1 and 2 asked by the plaintiff were properly given, and defendant's instruction number 14 was properly refused. The burden was on the defendant to show that the draw-rests were authorized by acts of congress. It was for the jury to say what weight should be given to the opinions of defendant's experts on the question whether the draw-rests were necessary for the protection of the bridge. *Dugan v. Bridge Co.*, 27 Pa. St. 303; *Kenney v. Railroad*, 80 Mo. 573; *Brown v. Railroad*, 13 Mo. App. 462; *Sappington v. Railroad*, 14 Mo. App. 86. Respondent's first and sixth instructions submitted to the jury in terms the question as to whether the upper draw-rest was a necessary part of the bridge and all of its instructions ignored the questions of notice so persistently urged now. One cannot be heard to complain of a supposed error in the instructions of his adversary, when his own contain the same alleged defect. *Holmes v. Braidwood*, 82 Mo. 610–15; *Noble v. Blount*, 77 Mo. 233; *Fairbanks v. Long*, 91 Mo. 628; *Soldans v. Railroad*, 23 Mo. App. 516. (4) The respondent's third instruction was correct. The defendant had the right to maintain a bridge built in accordance with the act of congress, and nothing more. It had no authority to maintain in said river obstructions to its free navigation, that might be mere conveniences to, or protection for, said bridge. Upon such a latitudinarian construction the entire river could be closed. *Packet Co. v. Railroad*, 1 McCrary, 281;

*Dugan v. Bridge Co.*, 28 Penn. St. 303. ( 5 ) Appellant's seventh ground for reversal is wholly untenable. There was no evidence of any change in the current above and through the bridge since it was built, nor of any change in the construction of the bridge since its erection. The appellant's instructions submitted to the jury the same identical issues as those in the instructions given for respondent. ( 6 ) After witnesses had testified that there had been no change in the current of the river above and through the bridge from the time of its construction down to the time of the accident and to the date of the trial, it was perfectly proper for the court to permit the witness Weeden and others to explain the course of the current, with reference to the bridge in 1885 and 1886. *Nisbet v. Gardner*, 39 N. W. Rep. 516 ; *Railroad v. Marion*, 2 West. Rep. 234.

BLACK, J.—The plaintiff brought this suit in the Cooper circuit court to recover damages for the loss of his steamboat, occasioned by injuries received while passing through the bridge over the Missouri river at Boonville. The plaintiff recovered a judgment on the second trial in the LaFayette circuit court for fourteen thousand dollars.

The act of Congress of May 11, 1872 ( 17 U. S. Stat. at L. 99 ), authorized the Boonville Bridge Company to build a bridge for the use of railroads over the river at Boonville under the limitations therein provided. The act then provides, among other things, "that said bridge shall not interfere with the free navigation of said river beyond what is necessary in order to carry into effect the rights and privileges hereby granted." It is further declared that if the bridge is built as a draw bridge it "shall be constructed as a pivot draw bridge, with a draw over the main channel of the river at an accessible and navigable point, and with spans of not less than one hundred and sixty feet in length in

the clear on each side of the central or pivot pier of the draw, * * * and the piers of said bridge shall be parallel with the current of the river."

It is further declared "that any bridge constructed under this act, and according to its limitations, shall be a lawful structure," and "that the structure herein authorized shall be built under and subject to such regulations for security of navigation of said river as the secretary of war shall prescribe; and said structure shall be at all times so kept and managed as to offer reasonable and proper means for the passage of vessels through and under said structure and the said structure shall be changed at the cost of the owners thereof, from time to time as congress may direct," etc.

The bridge was built in 1873 by the Boonville Bridge Company as a draw bridge, and the spans conform in length to the act of congress. There are also two draw-rests, as they are called, one above and the other below the pivot pier, each at a distance of one hundred and forty feet from it. They are wooden structures filled with stone and rise above the surface of the water and are twenty-four or twenty-five feet wide; the length does not appear to be given in the evidence. After the bridge was built by the Boonville Bridge Company it was leased to the Missouri, Kansas and Texas Railway Company, and by that company leased to the defendant. The admission in the case is, that defendant has maintained and controlled the bridge without change in the construction of the piers or draw-rests since December, 1880.

The plaintiff's boat attempted to go down stream through the draw on June 30, 1883, at a very high stage of water and was thrown over against the stone pier south of the pivot pier and received injuries from which she became disabled and sunk in less than an hour. The substantial charges relied upon, as grounds of recovery on the trial, are, that the piers of the bridge

were not parallel with but diagonal to the current of the river ; that the up-stream draw-rest was not authorized by the act of congress ; that these obstructions caused a cross-current to flow towards the south or Boonville shore ; and that the plaintiff's boat was thrown against the south shore pier by reason of these obstructions and cross-current. The answer set up mismanagement and contributory negligence on the part of the servants of the plaintiff in charge of the boat.

The evidence for the plaintiff tends to show that the channel of the river is along the south or Boonville shore for a considerable distance above the bridge, that it begins to leave that shore about three hundred yards above the bridge and goes in a northeast direction striking the Howard county shore about one mile below the bridge. Many witnesses testified that there has been no change in the current since the bridge was built, and that the piers and draw-rests are not and never have been parallel with the current. Some of them say the current runs diagonally between the piers, and others a little quartering. A county surveyor testified that the bridge did not stand at right angles with the current by ten or eleven degrees. There is also evidence tending to show that the effect of the water striking the draw-rest at an angle is to create a cross-current towards the Boonville shore and that this cross-current makes it difficult to go through the draw with a steamboat.

The evidence introduced on the question of contributory negligence and in refutation of it tends to show that to go down stream through the draw it is necessary to go out from the south shore some distance above the bridge and then get in line with the draw when open and to steer close to it. On the other hand the evidence of the engineers who built the bridge is, that they placed floats in the water and in this way got the line

of the current, and placed the bridge at right angles to this line, and that the piers are and always have been parallel with the current. Their evidence is supported by that of many other persons, some of whom are river men, and accustomed to direct boats through the draw.

The plaintiff offered no evidence tending to show that the draw-rests were not necessary parts of the bridge. For the defendant Wm. Sooy Smith, a civil engineer of vast experience in building bridges of the character of the one in question, testified: "Think the draw-rests were a necessary part of the bridge, to protect the bridge, and they are every where used in navigable streams almost without exception; I do know of a few exceptions. I shall say at least nine-tenths of the large bridges have such protections; they serve as a directrix to aid the boat in passing through. Without such protections the boat might run under the bridge and the top hamper be cut away; they keep the boat from drifting under the bridge." The evidence of many other experienced persons is that the draw-rests are a protection to the boats and to the bridge and also protect the pivot pier from drift wood. It seems the draw does not rest upon these wooden structures when it is open, save in case of undergoing repairs. The plans of this bridge were approved by the secretary of war.

1. It is unnecessary to set out the many instructions given and refused. The substance of those given for the plaintiff is, that if the piers were not parallel with the current, or if the upper draw-rest was not a necessary part of the bridge, then and in either event the act of congress furnished no justification for the maintenance of the bridge and draw-rest. The defendant insists that the evidence offered by the plaintiff to show that the piers were not originally parallel with the current is unreliable, unworthy of credence, and not sufficient to support the verdict.

While the evidence produced by the defendant is direct to the point that the piers were and are parallel

to the current, still there is much evidence of a contrary character. It is enough to say that this question was properly submitted to the jury. We may add however that the spirit and fair meaning of the bridge act can only be ascertained by reading its provisions in the light of the subject-matter of which the act treats. The course of the current of the river varies to some extent at different seasons of the year, and it was impossible to place the piers so that they would be at all times in an exact line with the current. If located fairly and substantially parallel with the usual and ordinary course of the current that is sufficient.

2. The next contention is that there is no evidence tending to show that the up-stream draw-rest was not a necessary part of the bridge. This objection is met by plaintiff with the argument that there is nothing in the act of congress expressly granting the right to build the draw-rests, and the burden of the proof is upon defendant to show that they were necessary parts of the bridge, and it was for the jury to say whether they believed the defendant's witnesses. The vice of the argument lies in the statement that the burden of proof was upon the defendant. The great mass of the commerce of the Missouri valley is carried up and down and across and beyond the river by means of railroads. It is common information that the commerce floated on the river is but a drop in the bucket. Congress has recognized this existing state of affairs, and has exercised its power and granted the right to railroad and other corporations to build numerous bridges over the river; some of them are draw bridges and others have continuous spans.

Bridges built under and pursuant to the terms of these acts are lawful structures. An act of congress authorizing a partial obstruction of navigation will not, however, protect an impediment not contemplated by the statute, and any excess in the exercise of the powers granted, by which navigation is impaired, becomes

a nuisance *pro tanto*. *Missouri River Packet Co. v. Railroad*, 79 Mo. 478; Gould on Waters, sec. 134. Now in looking to the pleadings, from the petition to the reply, we find it to be admitted that the bridge in question was built by authority of the act before mentioned. The terms and conditions of that act are as well known to the plaintiff as to the defendant, and when the plaintiff seeks to recover on the ground that the terms thereof have been exceeded, it devolves upon him to show that the bridge does not conform to the requirements of the law. In other words the burden of proof is upon him in this as in other cases.

The act of congress does not make any mention of draw-rests, but it says the bridge shall not interfere with the free navigation of the river beyond what is necessary in order to carry into effect the rights and privileges thereby granted. This declaration as well as the grant of the right to build the bridge carries the right to maintain such structures as are essential parts of it. It may be that the bridge could be operated without these rests, and it may still be that they are proper parts of it. If they serve as a protection to the draw when open, and to the boats themselves when passing through, they are not illegal structures, but are within the fair contemplation of the act. Now we agree with the suggestions made in respondent's brief, that the true character of these rests can be inferred from other facts in evidence, and that it was not necessary for the plaintiff to call witnesses who could speak as experts, but the facts must be such as tend to show that the structures were not essential parts of the bridge. We find no such facts put in evidence by the plaintiff. The evidence for defendant is to the effect that they not only protect the bridge and the draw, but that they also protect the boats. Other bridges are built with like structures, and it is in evidence that all of the draw bridges over the Missouri river have and use them.

Congress, in granting the right to build this bridge, must have contemplated that it would be constructed with the customary attachments.    There is in our judgment no evidence showing or tending to show that these draw-rests were unauthorized structures.    There was no evidence upon which to submit this issue to the jury, and the defendant's fourteenth instruction should have been given.

3.    As the cause must be remanded for the reasons just stated it is necessary to dispose of another question, and that is whether it was incumbent upon the plaintiff to show notice to or knowledge by defendant that the piers were not parallel with the current.    There can be no doubt but a lessee or grantee of premises is liable for the continuance of a nuisance which was created before his occupancy.    But the continuance must be with notice or knowledge of the nuisance ; and it has been generally held that an action cannot be maintained against him until he has been notified of the existence of the nuisance and requested to abate it. Gould on Waters, sec. 392, and cases cited by appellant ; notes to *Plumer v. Harper*, 14 Am. Dec. 333. But it is well settled in this state, and we believe it to be the better doctrine, that a request to abate is not necessary.    It is enough to show that the grantee or lessee had notice or knowledge of the existence of the nuisance ; this much, however, must be shown.    *Pinney v. Berry*, 61 Mo. 359 ; *Dickson v. Railroad*, 71 Mo. 576 ; *Wayland v. Railroad*, 75 Mo. 548.

The plaintiff here contends that notice of the existence of a nuisance to a lessee is not required in case of an obstruction in a highway, and he cites *Missouri River Packet Co. v. Railroad*, 1 McCrary, 282.    In that case the claim of the plaintiff was that the piers of the bridge and certain pontoons along the shore were obstructions to navigation.    The point seems to have been made that it was necessary for plaintiff to show

notice to abate and the court said the rule requiring notice to abate, before an action for damages can be maintained, does not apply to the case of an obstruction to a navigable river or other public highway. We have seen that notice to abate is not necessary in any case under our ruling. Besides it does not appear that the defendant in that case used the bridge as a lessee only. *Nichols v. City of Boston*, 98 Mass. 39, was an action for obstructing plaintiff's dock and depriving him of the use of his wharf. The obstruction com·plained of was occasioned by a ferry boat pressing against a line of piles. The piles were in the same condition when the city purchased the property, and the case was likened to that of one who acquired land on which a nuisance existed.

The bridge in this case was built in 1873 and it passed into the hands of the defendant as lessee in December, 1880, and this accident occurred in June, 1883. No complaint seems to have ever been made that the piers of the bridge were not parallel with the current. Indeed this complaint was not made in the original petition filed in this cause. We are of the opinion that plaintiff to recover must show that defendant knew or had notice that these piers were not parallel with the current, but we are also of the opinion that it is not necessary to show such knowledge by direct evidence. The knowledge may be inferred from other facts and circumstances, but that defendant did have such knowledge or notice should be found as a fact by the jury.

4. The defendant insists that it is not liable, if the piers, when built, were parallel to the current. The court so directed the jury by instructions given at the request of defendant, and the question is not before us. It matters not that refused instructions assert the same proposition.

5. The question is made in the motion in arrest of judgment that the state courts have no jurisdiction of

the subject-matter of the action. This claim is based upon the clause in the bridge act which says: "And in case of any litigation arising from any obstructions, or alleged obstructions to the free navigation of said river, the cause may be tried before the district court of the United States of said state of Missouri in which any portion of said obstruction or bridge touches." This clause is the same as that considered in the case of *Missouri River Packet Co. v. Hannibal and St. Joseph Ry. Co.*, 79 Mo. 478, where it was held the state courts had jurisdiction in these cases. No authority is cited to show error in that ruling, and we adhere to what was then said upon that question.

For the reasons before stated the judgment is reversed and the cause remanded. BARCLAY, J., is of opinion that it is not necessary to a recovery by the plaintiff that he show notice to or knowledge by defendant of the nuisance. In other respects he concurs. The other judges concur.