EDNA E. KNOX, Respondent, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY and THE MISSOURI & KANSAS INTERURBAN RAILWAY COMPANY, Appellants.

Kansas City Court of Appeals, February 18, 1918.

1. **NEGLIGENCE: Evidence: Joint Defendants: Relative Duties and Obligations.** In an action for damages for personal injuries against joint defendants the latter are not permitted to bring into the case the relative duties and obligations existing between themselves, as such a controversy involves the liability of each to the plaintiff, and not their responsibilities among themselves designed to define their rights in their business relations to each other. The law-making power, and not the defendants, can alone promulgate their obligation and liability to plaintiff.

2. ———: **Excessive Verdict: Passion and Prejudice.** Where there is evidence of probative force that the plaintiff suffered a severe injury as the result of a collision, the action of the trial court in reducing the verdict by half does not show that the jury was governed by passion and prejudice.

3. ———: **Judgment Against Two Defendants: Reversed as to Both.** Where the appellate court finds that one of two defendants is entitled to a reversal of a judgment obtained against both, the judgment must be reversed as to both, notwithstanding the error causing the reversal was injected into the case by the other defendant and not by the plaintiff.

4. **NEW TRIAL: Newly Discovered Evidence: Discretion of Trial Court.** The granting of a motion for a new trial on the ground

of newly discovered evidence rests largely in the discretion of the trial court, and many things must be present, such as the element of diligence, the probability of the new evidence producing a different result, and that it is not merely cumulative or simply to impeach the character or credibility of witnesses, before such a motion should be granted.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas, Judge.*

REVERSED AND REMANDED.

*Hadley, Cooper, Neel & Wright* and *J. D. Bowersock* for appellants.

*Brewster, Brewster, Kelly & Buchholz* for respondent.

BLAND, J.—This is an action for personal injuries. Plaintiff recovered a verdict and judgment against both defendants and they have appealed. As a matter of convenience the defendant, Missouri, Kansas & Texas Railway Company, will hereinafter be referred to as the Railroad Company and the defendant, The Missouri & Kansas Interurban Company, will be referred to as the Interurban Company. The accident happened in the city of Olathe, Kansas, at about 9:55 P. M. on the 4th day of January, 1915, while plaintiff was a passenger upon one of the cars of the Interurban Company. At the point of accident the Frisco Railroad Company maintained four tracks running northwardly and southwardly across a public street in said city. The defendant's, Interurban Company, track ran along said street and crossed said four tracks in an easterly and westerly direction. When the car in which plaintiff was seated (which was a west-bound car) reached a point with its rear trucks on one of the railroad tracks, a caboose and freight train of the defendant Railroad Company, using the tracks of the Frisco Railroad, backed into the Interurban car and injured plaintiff.

199 Mo. App. 5.

The petition charges general negligence against the Interurban Company and specific negligence against the Railroad Company.

Plaintiff called as her witnesses the motorman and conductor on the Interurban Company's car upon which she was a passenger. The conductor testified that when the Interurban company's car reached a point twenty (20) or thirty (30) feet from the railroad tracks it stopped and he alighted from the car and went on to the tracks and looked in both directions for trains; that a Frisco train was standing to the north and near the crossing and had an engine attached to it; that about 100 or 140 feet south of the Interurban tracks he saw the caboose and rear end of the freight train that later backed into the car; that at that time the freight train was standing still; that he then motioned for the motorman to proceed across the tracks; that it was in the nighttime and there was no one on the rear of the freight train or anything there that one by looking could see and tell when the train moved; that he did not notice that the freight train had moved until its rear end had reached a point forty to fifty feet from the Interurban Company's tracks; that he knew that it moved at that point only by reason of his hearing the jamming of the cars, and that it was then too late to avoid the accident. The motorman testified that the conductor alighted from the car and went to the place described by the conductor and that the conductor gave him a signal to proceed across; that he was unable to see the freight train approaching for the reason that there was a string of cars standing on a track between him and the track upon which the freight train was standing, which obscured his view until he reached a point eight (8) feet from the track upon which was the freight train; that at that time he first saw the train and immediately attempted to stop his car but was unable to do so but thought that he might beat the train across, so he speeded up but was unable to get across before the collision. He further testified that when he reached

a point where he could see the train he was going at
a rate of speed that would require a distance of twenty
(20) feet in which to stop the car.   There was evidence
on the part of the Railroad Company that the Interurban
car was late; that it made no stop; that no one alighted
from it before it proceeded across the railroad tracks,
and that when the Railroad Company started its train,
the latter gave three whistles.

At the trial the defendant, Interurban Company,
sought to prove and argue to the jury that when its
conductor went on to the tracks and saw the stationary
train he was justified in assuming that the train would
not back across the street and the Interurban's tracks
without giving some warning; that the train started
up and ran into the Interurban car without giving any
warning or signal whatever to show that it was going to
cross the street.   The court refused this evidence and
refused to permit counsel for the Interurban Company
to argue the matter before the jury and reprimanded
him for referring to it.   This evidence, and the effort
to argue the same to the jury, was refused by the court
on account of objections made by the defendant, Rail-
road Company.   The basis of these objections was
that there was nothing in plaintiff's petition in reference
to any failure of the Railroad Company to give any
warning or signal before backing its train across the
street in question.   On the rulings of the court in ref-
erence to this matter the Interurban Company bases a
claim of error, and in support thereof it urges that it
had a right to introduce testimony tending to show
and to argue to the jury any fact that would exculpate
itself from negligence.   There was evidence tending to
prove that the cars were ''kicked'' or ''shunted'' across
into the Interurban car.   And in this connection this
defendant suggests that there is a rule of law that a
railroad company may not start up and back its trains
or ''kick'' them across a public street without giving
some warning.   This is undoubtedly the rule.   [Wilkins
v. St. Louis, I. M. & S. R. R. Co., 101 Mo. 92; Fusili v.

Mo. Pac. Ry. Co., 45 Mo. App. 535; O'Connor v. Mo. Pac. Ry. Co., 94 Mo. 150; Tabor v. Missouri Valley Ry. Co., 46 Mo. 353; 2 Shearman and Redfield on Negligence (6 Ed.), sec. 471.]

There was no mention in the pleadings of a failure on the part of the railroad company to give a signal or warning, and for this reason plaintiff, if objection had been made, could not have introduced evidence tending to show such failure. However, the offer made on the part of the Interurban Company had nothing to do with plaintiff's right to recover against the railroad company. The offer was made for the purpose of showing that the Interurban Company had used a high degree of care in the operation of its car as it was required to do. We think that the court erred in refusing to allow the Interurban Company to introduce this evidence and to argue the matter to the jury. Had such evidence been admitted, as it should have been, the defendant, Railroad Company, could have been protected by asking an instruction from the court to the effect that the jury was not to consider the evidence in connection with the railroad company's liability to plaintiff. [State v. Phillips, 24 Mo. 475; The Union Savings Association v. Edwards, 47 Mo. 445; Stotebier v. St. Louis Transit Co., 203 Mo. l. c. 721; Carle v. DeSoto, 63 Mo. App. 161; Phillip v. Hamilton Brown Shoe Co., 178 Mo. App. 196.]

The rule as to the admissibility of evidence under circumstances as present in this case is stated by Wigmore as follows:

"It constantly happens that a fact which is inadmissible for one purpose is admissible for other purposes; while, on the other hand, a fact which is entirely admissible, so far as some rules are concerned, is excluded because it fails to satisfy some other rule. . .

In other words, when an evidentiary fact is offered for one purpose, and becomes admissible by satisfying all the rules applicable to it in that capacity, it is not inadmissible because it does not satisfy the rules appli-

cable to it in some other capacity and because the jury might improperly consider it in the latter capacity. . .

Here the only question can be what the proper means are for avoiding the risk of misusing the evidence. It is uniformly conceded that the instruction of the court suffices for that purpose; and the better opinion is that the opponent of the evidence must ask for that instruction; otherwise, he may be supposed to have waived it as unnecessary for his protection." [Wigmore on Evidence, sec. 13.]

There is a rule that two joint defendants are not permitted to bring into the case the relative duties and obligations existing between themselves, as the controversy involves the liability of each to plaintiff and not their responsibilities among themselves. Defendants are not authorized to invoke agreements, rules or customs made among themselves, designed to define their rights in their business relations to each other under ordinary circumstances, and about which the plaintiff has no concern, nor can one of such defendants shift the entire responsibility, so far as may affect plaintiff, upon the offender against the agreement, rule or custom among themselves, when the non-offender could have avoided the accident by the use of ordinary or the highest degree of care. The law-making power and not the defendants can alone promulgate the obligation and liability of defendants to their passengers. [Taylor v. Grand Avenue Co., 137 Mo. 363; O'Rourke v. Lindell Rd. Co., 142 Mo. 342.]

Plaintiff attempts to invoke this rule as against the right of the Interurban Company to show that it was not guilty of negligence on account of the Railroad Company not giving the warning. The duty of the railroad company to give the warning was not based upon any rules or customs existing between these defendants, and the evidence was not introduced for the purpose of bearing on any duties, rights or liabilities of the defendants between themselves. The rule was one made by the law over which neither one of the defendants

had any control, and it was a rule that the jury might have found the conductor of the Interurban Company had a right to assume would be observed by the Railroad Company.

It will not do to say that even if the Interurban Company was not advised of the movement of the train by the required warning that, nevertheless, it was negligent in another respect, that is, that the jury might have found that the motorman in discharging the burden of using the highest degree of care was guilty of negligence in running his car to within eight feet of the railroad track when he was unable to see the approach of trains from the south on such track, and not having his car sufficiently under control so that when he reached a point where he could see he could have stopped the car before it reached the track. As already stated, the evidence shows that when the motorman reached the place where he could see he was eight feet from the track and that the car was going at such a rate of speed that he could not stop it in less than twenty feet. Unless we could say as a matter of law that this was negligence on the part of the motorman, and that upon a showing to this effect plaintiff was entitled to an instruction that the jury should find for the plaintiff, we do not think that it would make any difference in the matter under discussion. All of the circumstances should have been submitted to the jury as it was their peculiar province to pass upon them. The motorman had received the signal from the conductor to proceed across the track and the freight train was not the only train present to indicate danger and that required the attention of the servants of the Interurban Company. The jury might very well have found that under such circumstances it was the duty of the motorman to hurry across the track as quickly as possible to avoid new dangers that might be ushered in at any moment. On the other hand, it might have found that the motorman was under some obligation to watch the Frisco train. While the jury might have

actually found that the motorman of the Interurban Company was not negligent in proceeding across the track as he did, yet they were not allowed to consider whether the conductor had discharged his full duty by relying upon the signal that should have been given by the Railroad Company. A showing by the Interurban Company that it relied upon the Railroad Company to discharge a duty imposed upon the latter by law to give some signal or warning before crossing the street, tended to exculpate the Interurban Company from fault, and this company had a right to have the jury consider this with all other competent matters that tended to show that  it had discharged its full duty. It is true that there was evidence, introduced by plaintiff without objection, that the conductor of the Interurban car relied upon the railroad company to give some such warning. Plaintiff urges that in view of this fact the court did not err in refusing the Interurban's evidence to the same effect. However this may be, the court erred in refusing to permit the Interurban Company the privilege of arguing the matter to the jury and in  reprimanding counsel for so doing.

A point is made that the court erred in submitting the case to the jury on the theory that the burden was upon the Interurban Company to show that it was not negligent. In this connection it is said that as against the Interurban Company the petition charges general negligence but that plaintiff, having introduced the evidence of the conductor and motorman to explain how the accident occurred, by her evidence showed that she was in possession of all the facts in relation to the cause of the accident. This evidence of plaintiff did not show that she knew the whole cause of the accident. There was evidence in the case, not introduced by plaintiff, that the conductor did not get off of the car to watch for the approach of the train and to signal the Interurban car to cross the tracks, but that the car was late and was seen to cross the tracks without any care on the part of anyone in control of it, and that the

train signaled before moving. The introduction of the evidence of the conductor and motorman was merely an attempt on the part of plaintiff to prove negligence under the facts, and did not show that she knew all about the accident. A mere attempt to prove negligence can hardly justify the assumption that plaintiff knew the cause of the accident. [Kilroy v. K. C. and K. V. Ry. Co., 195 S. W. 522; Price v. Railway, 220 Mo. 435; Loftus v. Railroad Co., 220 Mo. 470; Dollie C. Mining Co. v. Railroad, 194 Mo. App. l. c. 41.]

A point is made that the court erred in not awarding defendants a new trial upon the ground of newly discovered evidence. In support of their motions for new trial defendants introduced an affidavit which stated that plaintiff had been riding on a motor cycle and had been thrown therefrom prior to the collision in question. (Plaintiff claimed that the accident sued for had resulted in womb trouble.) Evidence brought out at the trial tended to show that defendants at that time knew of the motor cycle incident. Other affidavits stated that plaintiff, before the collision, frequently had improper relations with men, was very nervous and had ovarian trouble. The affidavits show that defendants' first obtained a clue to this information after the verdict and from some of the employees of the Interurban Company.

Motions for a new trial on the ground of newly discovered evidence are not encouraged. [Grocery Co. v. Hotel Co., 183 Mo. App. 429 and cases cited therein.] The matter of refusing or granting such motions is largely in the discretion of the trial court. [McPherson v. Harvey, 183 S. W. 653 and cases therein cited.] In order that such a motion may be granted a number of things must be present including the element of diligence, the probability of the new evidence producing a different result, the new evidence must be not merely cumulative and not simply to impeach the character or credit of the witness. [State v. Speritus, 191 Mo. 24.]

We think that the evidence claimed by defendants to have been newly discovered might well have been found by the trial court to have failed to meet the requirements of diligence and that it be not cumulative. As to the motor cycle incident, there is evidence that defendants knew the facts at the trial. As to the other matters defendants' affidavits show that they were known to their employees. The trial court, no doubt, found that had the defendants exercised diligence the matters could have been discovered before or during the trial and that the evidence was merely cumulative. Defendants put on the stand many doctors who had examined plaintiff and who testified as to the causes of her ailments. We do not think the trial court abused the discretion vested in him in his ruling on these matters.

A point is made that the verdict was excessive. The verdict was for five thousand ($5000) dollars but the court required plaintiff to make an involuntary remittitur of twenty-five hundred ($2500) dollars, which was complied with. There was evidence tending to show that plaintiff was a young woman of good health and was engaged as a piano player at the time of her injury. That the collision was one of great force, throwing plaintiff into the aisle of the car; that she lost consciousness and came to in a little while and again fainted; that she was taken to her home in Olathe in an automobile; that she was unable to walk; that a doctor was sent for and two doctors came to see her the night of the accident; that one of the doctors came to see her three times and after that the other doctor treated her; that she came to Kansas City about six weeks after the accident and the next day she saw another doctor and that this doctor had treated her three times a week until the trial; that she could not be moved until the next day after the accident and then was moved on a stretcher; that she suffered intense pain in her back and for a long time "could not raise off her back;" that she had a place as large as a saucer

on her right side and a bruise on her right leg; that the accident caused her to have a severe case of womb trouble and irregular and painful menstrual periods from which she suffered at the time of the trial; that she had none of these troubles before the accident; that she was never nervous before the accident but since had been very nervous, especially at night; that she could not sleep and would wake up and jerk and scream; that she was married about five months after the accident and has been able to do light work in the office of a laundry since; that since the accident she had been going to dances occasionally; that she went more to hear the music than anything else as she could not play since she was hurt; there was medical testimony that plaintiff was suffering from a very severe case of womb trouble and irregular and painful menstrual periods, and that these ailments could have been caused by the accident.

There was evidence of probative force that plaintiff suffered a severe injury as a result of the collision. We do not think that the fact that the lower court reduced the verdict by half shows that the jury was governed by passion and prejudice in its rendition under the circumstances. Nor do we think a recovery of twenty-five hundred ($2500) dollars under the circumstances was excessive.

There was no error in the instructions. But from what we have said the case must be remanded as to the Interurban Company. The Railroad Company contends that if the case is remanded as to one defendant it must be remanded as to both, citing Miller v. Transit Co., 155 Mo. App. l. c. 546-7-8. In that case it was held that the defendants could enforce contributions between themselves in a separate action brought under section 5431, Revised Statutes 1909, for that purpose, if the circumstances allowed. And this being a fact, each one was interested in the amount of plaintiff's recovery and each, under the circumstances of that case, ought to have the privilege of defending plaintiff's

suit throughout. In that case error was found to have been committed against only one of the tortfeasors, but the case was remanded as to both. However, in the Miller case the error was injected into the case by plaintiff. In the case at bar the error was made at the invitation and request of the Railroad Company and as plaintiff was willing that the evidence be introduced and that the argument be made to the jury, she was in no wise accountable for the error. The defendant, Railroad Company, was solely responsible for the error committed and it cannot now take advantage of its own wrong. Having brought the error into the case, it cannot now ask that the judgment be reversed and remanded for an error of its own commission. [Hogan v. Hinchey, 195 Mo. 527; Western Tie and Timber Co. v. Naylor Drainage District Company, 226 Mo. 420; Hiler v. Cox, 210 Mo. 696; Price v. Breckenridge, 92 Mo. 378; Mitchell v. Wabash Ry. Co., 97 Mo. App. 411; Lee v. Hassett, 39 Mo. App. 67; White v. The Nelson Mfg. Co., 53 Mo. App. 337.]

However, in view of our statute, section 2090, Revised Statutes 1909, there can be but one final judgment in the case, and it has been held in a case involving the same dilemma that where it is necessary to reverse and remand a case as to one defendant it must be remanded as to both. Plaintiff being unwilling to dismiss the case as to defendant, The Missouri and Kansas Interurban Railway Company, and thus obviate any necessity of reversing the case, the judgment must be reversed and remanded as to both defendants, and it is so ordered. All concur.