WESTERN TIE & TIMBER COMPANY, Appellant, v. NAYLOR DRAINAGE DISTRICT COMPANY.

Division Two, March 15, 1910.

1. **DRAINAGE DISTRICT: Appeal to Circuit Court: Trial De Novo.** The landowner, under article 4 of chapter 122, Revised Statutes 1899, is entitled to an appeal to the circuit court from the order of the county court establishing the drainage district only on the grounds in the statute mentioned. And in this case, where the application for an appeal was filed in the county court in August, 1904, the authority and jurisdiction of the circuit court were limited to the trial and determination of two questions: first, whether compensation had been allowed for property appropriated; and, second, whether proper damages had been allowed for property prejudicially affected by the improvements. The circuit court cannot try the entire case *de novo*, but where that error is invited by appellant he cannot complain of it.

2. ————: ————: **What Questions Cannot be Considered.** Since the statute states from what part of the proceedings in the county court to establish a drainage district under Art. 4, Ch. 122, R. S. 1899, an appeal may be taken, neither the circuit court on appeal, even though it erroneously try the case *de novo*, nor the Supreme Court on appeal from its judgment, can consider either (1) the sufficiency of the notice given to the owners of lands to be affected by the proposed improvement to bring them into court; or (2), whether or not the beginning, course and terminus of the proposed ditch was properly designated in the original petition; or (3), whether or not the petitioners had a legal right to file an amended petition in the cause; or (4), whether or not the attorney for the petitioners had legal authority to sign their names to the amended petition; or (5), whether or not the viewers or the county court or both had lawful authority to change the beginning, course and terminus of the proposed ditch from those stated in the original petition; or

(6), whether or not said district had power to exercise the right of eminent domain in securing a right of way for the proposed ditch; or (7), whether said ditch would drain all the lands to be affected by said 'proposed ditch and especially appellant's land; or (8) whether or not the proposed ditch had an adequate outlet.

3. ———: ———: ———: **Matters not Mentioned in Affidavit.** Only such matters can be considered on appeal to the circuit court from the judgment of the county court establishing a drainage district under article 4, chapter 122, Revised Statutes 1899, as are set forth in the affidavit and application for the appeal as grounds therefor.

Appeal from Ripley Circuit Court.—*Hon. Henry C. Riley,* Judge.

Affirmed.

*Block & Sullivan* and *John M. Atkinson* for appellant.

(1) The trial in the circuit court was *de novo* and appellant had the right to there present all questions here argued. King's Lake District v. Jamison, 176 Mo. 562; R. S. 1899, secs. 3318, 3334. (2) The county court acquired no jurisdiction to establish the drain. a. The affidavit for publication to non-resident landowners, was not sufficient to justify an order of publication. R. S. 1899, sec. 8286; Harness v. Cravens, 126 Mo. 247; Schell v. Leland, 45 Id. 292; Tooker v. Leake, 146 Id. 431; Crossland v. Admire, 149 Id. 656; Parker v. Burton, 172 Id. 91; Cummings v. Brown, 181 Id. 717. b. The county court failed to acquire jurisdiction of numbers of resident landowners. Infant landowners are to be served precisely like adults. Hendricks v. McLean, 18 Mo. 37; Smith v. Davis, 27 Id. 300; Baumgartner v. Guessfield, 38 Id. 41; Railroad v. Campbell, 62 Id. 588; Campbell v. Laclede Co., 84 Id. 367; Fischer v. Siekmann, 125 Id. 176. c. A drainage proceeding is a special statutory proceeding, and the required notice to all concerned is essential to jurisdiction over any. Eaton v. St. Charles County, 8 Mo.

App. 177, 76 Mo. 493; State ex rel. v. Wall, 153 Mo. 222; Whitely v. Platte County, 73 Id. 30; Anderson v. Pemberton, 89 Id. 66; In re Essex Ave., 121 Id. 105; State ex rel. v. Wilson (Mo.), 216 Mo. 215; Names v. Commissioners, 30 Mich. 490; Dickinson v. Van Wormer, 39 Id. 142; Bennett v. Olney, 56 Id. 634; Kinnie v. Bare, 80 Id. 347; McKee v. Hull, 69 Wis. 662; State v. Lyon, 73 Id. 601; Fraser v. Trelawney, 129 Id. 377; Scott v. Brackett, 89 Ind. 418; Bosemer v. Kelsey, 106 Id. 506; Carr v. Boone, 108 Id. 241; Stites v. Miller, 120 Id. 19. d. Condemnation of the right of way was the exercise of the power of eminent domain. R. S. 1899, secs. 8285, 8286. In such cases, all statutory prerequisites must be strictly complied with. Williams v. Kirby, 169 Mo. 628; Bledsoe Hill, 200 Id. 643. Without jurisdiction of all the landowners whose lands were to be taken for a right of way, the county court was without jurisdiction to establish the district as to any landowner. Anderson v. Pemberton, supra; In re Essex Ave., supra; Names v. Commissioners, supra; McKee v. Hull, supra; State v. Lyon, supra; Wright v. Wilson, 95 Ind. 412. (3) The drain described in the petition was not that ordered established, and the county court was without jurisdiction as to the latter. R. S. 1899, secs. 8279, 8280, 8281, 8290; In re Essex Ave., supra; Lager v. Sibley County, 100 Minn. 85; Jurris v. Virgens, 104 Id. 75. (4) The burden of proof as to the sufficiency of the outlet and the benefit to appellant's lands rested with respondent. Bennett v. Hall, 184 Mo. 413; McKinsey v. Bowman, 58 Ind. 91; Covey v. Swagger, 74 Id. 214; Trittipoe v. Beaver, 155 Id. 655. (5) Upon the evidence, the proposed drain lacked an outlet, and appellant's lands would be damaged, not benefited, by its construction. Jurris v. Virgens, supra.

*Thos. F. Lane* for respondent.

(1) In the outset we desire to say that we have no quarrel with appellant as to the holding of the ap-

pellate courts of this State on the general doctrine
that statutory and inferior courts' jurisdiction must
appear from the face of the proceedings.  To this ef-
fect appellant has cited a great many cases.  The cases
cited, however, do not sustain or attempt to sustain
the proposition under which they are cited, that, "the
required notice to all concerned is essential to juris-
diction over any."  In Indiana this identical question
has been adjudicated, and it was held that the fact
that one or more landowners are not notified of the
proceedings to establish a ditch does not vitiate the
proceedings as to those who have notice.  Carr v.
Boone, 108 Ind. 241; Poundstone v. Baldwin, 145 Ind.
139; Grimes v. Coe, 102 Ind. 406; Young v. Sellers,
106 Ind. 101.  It is also there held that if notice is
given which the court held sufficient the proceedings
are not subject to collateral attack because of the in-
sufficiency of the notice.  McMullin v. State ex rel., 105
Ind. 334; Leonard v. Sparks, 117 Mo. 103.  In most
jurisdictions the finding of the commissioner, or the
county court, after a hearing, is conclusive as to the
necessity of the improvements and whether the public
health and welfare will be promoted, and no appeal is
granted for any further hearing on such questions.
State ex rel. v. Stewart, 74 Wis. 620; 6 Civ. Law, p.
1448, sec. 1 and note.  In the absence of fraud, the
finding of the court that the lands will be benefited, or
that the drain is necessary or practical, is not subject
to review by appeal, or in subsequent proceedings (nor
subject to collateral attack).  8 Current Law, p. 1890;
Alstad v. Sims, 109 N. W. 6; Ritter v. Drainage Dist.,
94 S. W. (Ark.) 711; Laguna Dist. v. Martin Co., 89
Pac. 993.  (2) The amendment was legal and proper,
because the same notice was given, and the opportunity
presented to the landowners to be heard and have their
day in court, upon said amended petition; with the
same particularity, and within all the forms of the

law, as if it in fact had been the only petition filed. The county court could have changed the location without all this formality, but they preferred the latter way. R. S. 1899, sec. 8287; State v. Superior Court, 42 Wash. 491. (3) No question could be litigated upon trial in the circuit court, or can be heard by this court, except those that were specifically raised by the exceptions filed by appellant in the first instance in the county court. Appellant is limited, under the statute governing this proceeding, to such questions as he raises by the exceptions filed with the county court; second, the questions as to the fairness and justness of the assessment of the lands, and as to whether the proposed drainage district is conducive to the public health and general welfare of the community, and as to whether the drain will be a benefit to the lands within the district, are all questions of fact which have been duly and legally passed upon by a court of law upon a fair hearing, and the Supreme Court will not set aside the finding and judgment of the circuit court upon any of these questions, because they are questions of fact, and for that reason the judgment of the lower court will not be disturbed. The verdict, based on conflicting evidence, will not be disturbed. Bray v. Riggs, 110 Mo. App. 630; Smith v. Telegraph Co., 113 Mo. App. 429; Betz v. Telephone Co., 121 Mo. App. 473; Fulton v. Railroad, 125 Mo. App. 239; Sparks v. Jasper County, 213 Mo. 218; Landrum v. Railroad, 132 Mo. App. 717; Cartlich v. Railroad, 129 Mo. App. 721. The finding by the court on conflicting evidence has the force of a verdict and will not be disturbed on appeal. Turner v. Tucker, 180 Mo. 205; Manufacturing Co. v. Robertson, 176 Mo. 198; Peniston v. Schlude, 171 Mo. 132; Mound City Co. v. Miller, 170 Mo. 240; Delaseau v. Faherty, 164 Mo. 361; DeSteigner v. Martin, 182 Mo. 417; McKinney v. Doane, 155 Mo. 287.

BURGESS, J.—This proceeding was instituted in the county court of Ripley county, under article 4, chapter 122, Revised Statutes 1899, and the various amendments thereto, for the purpose of organizing a drainage district, designated "Naylor Drainage District No. 1."

The petition was in the usual form and conformed to the requirements of said article, and was brought to the November term, 1902, of said court. The petition was accompanied by a statutory bond to secure the costs of the proceedings. Thereupon the county court, in compliance with section 8290, Revised Statutes 1899, made an order appointing three viewers and a civil engineer, with directions to view and survey the route of the proposed drain, its beginning, course and terminus, and to report to the court the result of their proceedings at the next term thereof.

Due and proper notice of the filing of the foregoing petition and the order of the court made thereon, as aforesaid, was given by publication in the manner and form required by said drainage law.

On the 29th day of December, 1903, the viewers theretofore appointed by the court made their report as required by said law. And upon the same day, said petitioners filed in said cause their amended petition. This petition was substantially the same as the original, except it described the beginning, course and terminus of the proposed ditch as follows:

"Beginning at the northeast corner of section 1, township 22, range 4 east, thence in a southwesterly direction across sections 1 and 12 of above township and range, crossing the Doniphan Branch of the St. Louis, Iron Mountain & Southern Railway at their trestle, No. 1089; thence again in a southwesterly direction, crossing sections 11, 14, 15 and 22, township 22, range 4 east, and crossing the north-and-south quarter section line of section 22 of the above township and range about 1000 feet north of the center of

said section 22; thence in a southwesterly direction, crossing the section line dividing sections 21 and 28, township 22, range 4 east, about one-fourth mile east of quarter section corner, between sections 21 and 28 of above township and range; thence in a southwesterly direction, across sections 28, 29, 31 and 32, township 22, range 4 east, passing through lot 17 of said section 31; thence diagonally across the southeast quarter of the southeast quarter of section 36, township 22, range 3 east, to the southwest corner of the said subdivision of Ripley county, Missouri, being the termini of the proposed ditch and drain, an approximate distance of about nine miles, together with such other side, lateral, spur or branch ditch, drain or water courses or levees or other works that shall be necessary to secure fully the object of the improvement herein petitioned for. Your petitioners further state that the lands, aggregating about 15,000 or 20,000 acres, lying and being adjacent to said proposed ditch and drain, will be benefited by said ditch and water courses and other improvements, and which are liable to be affected by or assessed for the construction of said proposed improvements,'' etc.

Then follows the preliminary report of the viewers, which is substantially embraced in the following order of the court:

''And now, on this day, come Oscar Gayle, A. P. Russell and W. L. Cooper, viewers, and A. C. Spicker, engineer, who having first been duly sworn and qualified as the law directs, to proceed to go upon the proposed line and actually view the proposed route and adjacent lands adjoining said proposed ditch and drain as described in the petition heretofore filed in this court, and submit to the court their report in writing, which is by the court ordered filed. It appearing to. the court that by said report of viewers and engineer, the beginning point in the route and line of said ditch and drain, as well as the termini of the same, which

by said report recommended as the best and most practicable route, varies from that mentioned in the original petition filed in the cause, and it further appearing to the court that the petitioners have heretofore this day filed in court an amended petition in this cause, praying the court to locate and construct a ditch and drain upon the line and route proposed and recommended by the report of the viewers and engineer hereinabove mentioned. Which proposed route in said report, and in said amended petition, is described as follows:"

Then follows the same description of the route as that before described in the report of the viewers. Then the order of the court continues:

"And it is further ordered that the clerk of this court give notice by publication, as required by law, of the pendency of this petition, the appointment of the viewers and engineer and description of route of said proposed ditch and drain as contained in said amended petition as required upon the filing of a new petition in such case, and this cause is continued."

Following this order, publication was made for one insertion in a newspaper published in the county, as follows:

## "ORDER OF PUBLICATION.

*"Notice of the pendency of a petition for a ditch and drain; the appointment of viewers, the location and description of said ditch and drain.*

"Public notice is hereby given that Geo. S. Green and others, landowners of Ripley county, Missouri, and owning lots or lands that will be drained or benefited and liable to be assessed by reason of the construction of the ditch, drain or water course or other improvements petitioned for and proposed to be located and constructed, as described in their amended petition this day filed in court, the place of beginning, route

and termini of said proposed ditches or drains being as follows, to-wit:

"Beginning at the northeast corner of section 1, township 22, range 4 east; thence in a southwesterly direction across sections 1 and 12 of above township and range, crossing the Doniphan Branch of the St. Louis, Iron Mountain and Southern Railway at their trestle No. 1089; thence again in a southwesterly direction, crossing sections 11, 14, 15 and 22, township 22, range 4 east, and crossing the north-and-south quarter section line of section 22 of above township and range, about 1,000 feet north of the center of said section 22; thence in a southwesterly direction, crossing section line of sections 21 and 28, range 4 east, township 22, about one-fourth mile east of the quarter section corner between sections 21 and 28 of above township and range; thence in a southwesterly direction across sections 28, 29, 31 and 32, township 22, range 4 east, passing through lot 17 of said section 31; thence diagonally across the southeast quarter of the southeast quarter of section 36, township 22, range 13 east to the southwest corner of said subdivision in Ripley county, Missouri, being the terminus of the proposed ditch and drain, an approximate distance of about nine miles, together with such side, lateral, spur or branch ditch, drain or water course or levees, or other work that shall be necessary to secure fully the object of the improvements petitioned for.

"And upon examination and hearing of said amended petition, the county court of Ripley county doth find that the petitioners have heretofore given bond to the State of Missouri in the sum of five hundred dollars, as the law provides, for the payment of all costs, if the prayer of the petitioners be not granted or it be dismissed for any cause. And whereas the proposed ditch and drain, beginning, route and termini thereof, as above set out and as described in the amended petition, and as viewed and recommended and de-

scribed in the report of the preliminary view and survey as made by Oscar Gayle, A. P. Russell and W. L. Cooper, three disinterested freeholders of the county, and A. C. Spiker, a competent surveyor and civil engineer, heretofore appointed by the court to view the line of the proposed improvements as mentioned in the original petition filed in this cause, preliminary report in writing was made and filed by said viewers on the 29th day of December, 1902, at the adjourned term of this court, duly made of record on the 10th day of November, 1902, of said November term, 1902, of said court, varies from the route described in the original petition.

"Wherefore, in consideration of the premises it is ordered by the court that consideration of the said amended petition, as well as of the preliminary report of the viewers and engineer heretofore filed, be and the same is hereby continued until the next regular term of this court, and it is further ordered that the clerk of this court give notice by publication as required by law of the pendency of the amended petition, the appointment of the viewers and engineer, and the filing of their preliminary reports as aforesaid, and description of route of said proposed ditch and drain in said amended petition contained, as required upon the filing of a new petition and the cause is continued. It is further ordered that a copy hereof be published in the Prospect News, a weekly newspaper printed and published at Doniphan, Ripley county, Missouri, for one insertion.

"Done at office in Doniphan, this 29th day of December, 1902.                    JNO. M. ATKINSON,
                    Clerk of the County Court."

On the 6th of February, 1903, a day of the February term, 1903, of that court, this order was entered by the county court in this proceeding:

"And the court having seen and heard said report, and being fully satisfied that the same is just and

correct in all respects, doth order that the same be and is hereby approved and confirmed in all things. And the court further find that a sufficient outlet exists at the termini of said ditches and drains or water courses in the channel of Cypress Creek, which has for its outlet Indian Creek, and Indian Creek has for its outlet Little Black River, which outlet we deem good and sufficient. The court further finds that said proposed ditches, drains or water courses are more than five miles in length, and that said proposed improvement will be conducive to the public health, convenience and welfare, and are necessary to drain lots and lands of petitioners, and others, and public road and railroad.

"And it is further ordered by the court that said ditches, drains and water courses, levees, and improvements be located and constructed as described and recommended by said preliminary report. It is therefore ordered by the court that said reviewers, with A. C. Spiker, a competent surveyor and engineer, who is hereby appointed by the court as engineer for said district, and required to give bond in the sum of one thousand dollars, go upon the lines of said ditches, drains, and water courses and levees described in this order, and set out in the report of the viewers hereinabove set forth, and level the same and set a stake to every one hundred feet numbering down stream, mark the intersections of boundaries of lands, township and county lines, land marks, bench marks, roads, crossing and railroad crossings. And make a report, profile and plat of the same, and estimate the number of cubic yards of earth or other substance to be removed in constructing said ditches, drains or water courses and levees, and the cost per cubic yard for each working section of one hundred feet. And for the whole work. They shall also make and return a schedule of all lots and lands and public or corporated roads or railroads that will be benefited or damaged

by said improvements and the benefit or damage to each tract of forty acres or less, and apportion the benefits or damages that will result to each lot or tract of land, road or railroad in proportion to the benefits or damages which will result to each from the improvements. And shall also make an estimate of the cost of location and construction and apportion the same to each lot or tract of land of forty acres or less, and specify the manner in which the improvement shall be made and completed, the number of flood gates, waterways, farm crossings, bridges and other matters necessary, including the probable costs and dimensions thereof, and note the county and township lines, and railroad crossings.

"The plat shall be drawn upon a scale sufficiently large to represent all of meandering of said improvements, and shall distinctly show the boundary lines of each lot or tract of land, and each road or railroad to be benefited thereby, the name of the owner of each tract of land as the same appears on the taxbooks at the time, the authority or company having in charge, owning or controlling each public or corporate road or railroad, the distance in feet through each tract or parcel of land, together with such matters as the viewers or engineer may deem material.

"The profile shall show the surface, the grade line for the bottom of the ditches, and the top of levees and grade, if any, fixed, and they shall make and file with their report an itemized bill of cost, made in the proper discharge of their duties, and shall file their report with the county court within thirty days after making said survey and levels."

The engineers and the reviewers referred to in this order took the oath required by law February 23, 1903. On the 22d day of January, 1904, these reviewers filed their final report in the county court and their assessments of benefits then returned into the county court were in words and figures as follows, to-wit:

Tie and Timber Co. v. Drainage Co.

| Names of Land Owners. | Description of Land. | Sec. | T. | R. | Acres and Hundredths | Benefits Assessed. | Actual Cost to Each Tract. | Amount for Construction. | Amount for Location. |
|---|---|---|---|---|---|---|---|---|---|
| Fritzerald, J. S. | NE.  NE. | 1 | 22 | 4 | 40.00 | $400.00 | $168 | $142.80 | $25.20 |

Then follow the names of the various owners, about one hundred in all, and the description of about four hundred other tracts of land, and the assessments made against each.

On the coming in of the report of these viewers, the clerk of the county court, in vacation, made and entered an order fixing February 1, 1904, the first day of the February term, 1904, for the hearing. On that day the court continued the matter to March 2, 1904.

On the 2d day of March, 1904, an affidavit for publication to landowners was filed, which was as follows, to-wit:

"*State of Missouri, County of Ripley, ss.*

"Now at this time comes David B. Young, who being first duly sworn, makes oath and says that he is interested in the drainage of the lands in Naylor District No. 1, in said county and State, and that he is creditably informed and verily believes that the Star Ranch & Land Company, a corporation, the Western Tie & Timber Company, a corporation, Lee Crim, E. C. Swauner, Leir Knowlton, E. C. Markhane, Alfred Short, Helen A. Short, G. W. Griffith, J. F. Eddington, E. G. Harleson, T. J. Mariner, P. A. Noble, A. J. Fullerlove, Theodore Gutiline, W. F. Wineger, N. M. Cobb, Jacob Meyers, The Reynolds Land Company, a cor-

poration, Given Gamlilin, Chas. S. Chouiski, V. C.
Eddy, T. N. Crabtree, C. A. Dunn, J. S. Fitzgerald,
the St. Louis, Iron Mountain & Southern Railway Com-
pany, a corporation, and the St. Louis, Southern &
Memphis Railroad, unknown heirs, Richard Venable,
Rebecca Thompson, Ethel Harris, J. W. Martin, R.
Asbury, Sallie Reddish, Martha Ann Libby, W. W.
Asbury, Mary Ellen Mikesell, J. H. Asbury, who are
owners of lots or parcels of land and real estate af-
fected by such proposed improvements, are without
the county of Ripley, in which said work is located,
and have no agent or tenant resident in said county
on whom proper services of the notice of the filing of
the petition and report of the viewers in the premises
can be made.

"Subscribed and sworn to," etc.

Upon the filing of this affidavit, on the 2d day of
March, 1904, the county court made an order of publi-
cation addressed to the various parties mentioned in
this affidavit. This order was published in a county
newspaper. As no question is here raised as to the
sufficiency of the publication, if the court was author-
ized to order it, we omit the same from this statement.
There was no other affidavit for publication, and no
other publication, and no other service had upon the
parties therein named.

The notices to landowners affected, but not in-
cluded in the foregoing affidavit and publication, and
the manner of their service, was in the following form:
*"State of Missouri, county of Ripley, ss.*

"In the County Court of Ripley county, Missouri:
"The State of Missouri to the sheriff of Ripley county.
    Greeting:

"We command you to summon .............., if
........ be found in your county, to appear before our
county court, to be holden within and for the county
of Ripley, at the courthouse in the city of Doniphan,

226 Süp—28

in said county, to be begun and held on Monday, the 21st day of March next, 1904, and then and there, before the judges of our said court, to answer, or show cause, why the report of the viewers filed in the matter of the petition of George S. Green, et al., praying for a system of drains or water courses, in Ripley county, Missouri, and known as Naylor Drainage District No. 1, in said county, should not be by the court approved as filed, the same being the day to which said cause was by the court continued for the hearing of said report, and certain lands owned by .................. being affected by said proposed drainage and improvements, and are assessed for benefits, as set forth in said report. And have you then and there this writ, with the return of your action thereon.

"Witness my hand, as clerk of our said county court, and the seal thereof. Done at office in Doniphan, in the county aforesaid, on the ...... day of February, 1904.                    W. C. MABREY,
                    "Clerk of the County Court."

In each summons the name of the party on whom it was to be served was inserted. One of these commanded the sheriff to summon J. A. Woodward, guardian of "Harris heirs," and was returned served by the sheriff upon Woodward only. Another issued directing service upon St. Louis, Memphis & Southeastern Railway Company, and the only return of service was "by reading to the within named party." Another for the St. Louis, Iron Mountain & Southern Railway Company was returned served by "delivering copy to C. Dachwald to the within named party." The summons for Wm. Byrd was served "by sending copy to within party." That of B. W. Stayton was executed "by leaving a copy of the same at the usual place of abode of the within named party," without more. On the summons to S. F. Hess, the sheriff wrote "dead and non-resident," and returned it to the clerk. On the one for Emmett Bounds he wrote "non-resi-

dent,'' and returned it. On the summons for C. M.
Byrd, C. V. Byrd, Pearl Byrd and C. N. Cash, guar-
dian, the sheriff made no return. A summons issued
to "Heirs, J. F. Asberry," was redelivered to the
clerk's office without any return.

Summonses were also issued for each of the follow-
ing persons: J. J. Smith, Adolph Barr, G. W. Griffith,
C. Jones, G. W. Cain, D. L. Cain, S. E. Wright, T. J.
Mariner, Andrew McCarty, J. F. Eddington, Maud
Harris, I. R. Reagin, Rebecca Thompson, Levi Knowl-
ton, C. J. Byrd, Lewis Hunt, J. B. Hampton, W. C.
Hubbard, Given Gamblin, J. W. Martin, Borth & Bar-
rett, E. C. Markham, Theodore Gutilins, J. G. Jackson,
N. M. Cobb, L. H. Webb, T. N. Crabtree, Helen A.
Short, P. A. Noble, J. A. Higgins, R. H. Rigdon, Crim
Lee, A. E. Hall, J. S. Wyatt, J. H. Green, D. J. Green,
E. A. Green, W. C. Hubbard, J. H. Green, D. G. Green,
E. A. Green, J. E. Graves, L. E. Graves, W. B. Hall,
W. F. Winniger, Jacob Meyers, A. J. Fullerlove,
R. H. Rigdon, V. C. Eddy, Richard Venable, A. Short
and J. D. Keys. Each of these found their way back
into the clerk's office without any return upon any
of them, and with nothing to show any sort of service
or attempt at service.

Thomas F. Lane, counsel for respondent, stated
(it being agreed that the following statement should
be regarded as his testimony) that about the time the
original petition was presented to the county court, the
parties who signed the same employed him to represent
them; when the viewers' report was filed, changing the
route of the ditch, these parties authorized him to pre-
pare and file an amended petition, conforming to the
viewers' report, and sign their names thereto, and
that he accordingly did so, and the names signed to
the amended petition were signed by him.

After these proceedings there were various con-
tinuances, the last one being to the first day of August,

1904, which was the first day of the August term, 1904, of that court.

Appellant's exceptions to the proceeding were filed in the county court on the first day of August, 1904, a day of the August term, 1904, of that court, and omitting caption and signature, were as follows:

"Now at this time, on the day set for the hearing in the matter of Drainage Ditch District No. 1, in Ripley county, Missouri, comes The Western Tie & Timber Company and remonstrate and object to the work and ditch as located and reported by the petition and viewers, and as grounds therefor state:

"That the said Western Tie & Timber Company owns a large quantity of swamp and overflowed lands in said drainage district, consisting of several thousand acres, as will appear by a plat herewith filed and as appears by the report filed by the surveyor and viewers, and that said lands will be affected by said ditch or proposed ditch.

"That said ditch is impracticable, and will not carry off the surface waters, as proposed, and has no good and sufficient outlet, and is not conducive to health or the general welfare.

"That as shown by the report of the surveyor and viewers the ditch stops at the State line between the states of Arkansas and Missouri, and no outlet is shown and none in fact exists from that point.

"That it is proposed by the petitioners for said ditch that the waters of said ditch shall be discharged from said ditch at the said State line into what is called Cypress Creek or Cypress Creek Slough, and that said Cypress Creek, at that point, the State line, is six or seven feet higher than the bottom of said proposed ditch, and that the result will be that the waters from said ditch instead of flowing on south through said Cypress Creek will not do so, but will spread out over the adjoining lands of the said Western Tie & Timber Company and others, and their lands be great-

ly damaged thereby, and that said ditch will be of no practical benefit whatever.

"That the said Western Tie & Timber Company further protest against the assessments made against their lands in the south half of section 14, the south half of section 13, all of section 26, all of section 27, township 22, range 4 east, for the reason that said lands lie east of a ridge while the proposed ditch lies west of said ridge or high ground, and said lands will not be drained by the said proposed ditch; but said lands above mentioned are overflowed and lie in a basin which will require another and separate ditch, or a lateral ditch to drain them at some future time and will be subject to another assessment for said future ditch. That the assessments on all the other lands are unfair, not in proportion to the benefits to be received as compared with other lands.

"These protestants therefore ask that said ditch be not approved as it is now surveyed, and that the lands be not assessed for the reasons herein set forth unless said ditch be changed so as to drain them or be made of some practical benefit to said lands."

The final order of the county court in the matter, made on the first day of August, 1904, at its August term, 1904, was as follows, omitting title of the proceeding:

"And now the above-entitled cause coming on to be heard and the court being fully advised in the premises doth find that due legal notices according to law have been given to all parties interested in the lands in said district and of the time and place of hearing on said petition and report of viewers; the court further finds after due consideration that the assessments of the lands in said drainage district are fair and just; and the court orders that the report of the viewers and engineer heretofore filed in all things be and is hereby approved, and that said ditch

and improvement as specified in said report be constructed and established according to law."

And, thereupon, on the second day of August, 1904, a day of the August term, 1904, of the county court, appellant filed its petition for appeal in such matter to the circuit court, which, omitting the title, was as follows:

"Now at this time comes the Western Tie & Timber Company and prays an appeal from the judgment and order of the county court of said Ripley county in the matter of said Drainage Ditch District No. 1, and as grounds therefor states that this appeal is not taken for vexation or delay, but because the appellant and this affiant believe the appellant is injured by the order and judgment of said county court, and that the matters appealed from herein are because the opening and establishing of said ditch will not be conducive to public health; because said proposed ditch will not materially drain or reclaim the lands or any considerable portion of the same which have been assessed to pay for the building of said ditch; because the route of said ditch is not practicable; because said proposed ditch has no outlet at the lower end to take said water away; because the assessments of the lands of appellant as made by the viewers' report and approval by the court are unfair, unequal, not in proportion to the benefits received, excessive, and not made on the principle as provided by law of such benefits derived; because said ditch is not sufficient to take care of the water which will necessarily flow over and into said ditch and will drain and reclaim only a very small proportion of the lands assessed."

This was subscribed and sworn to by C. S. Chouiski, on the 1st day of August 1904.

The appeal was duly allowed to the circuit court of said county, in the month of June, 1905. Upon the cause reaching the circuit court, appellant filed therein

its plea to the jurisdiction of the county court, which, omitting formal parts, was as follows:

"Comes now Western Tie & Timber Company and respectfully shows to the court that the judgment of the county court herein, establishing said drainage district and assessing the lands of said Western Tie & Timber Company, and other landowners, for the drain, is void for want of jurisdiction in said county court, and asks that the same be set aside and for naught held, for the following reasons, to-wit:

"First: Because the petition, filed in said county court, for the organization of said district, does not furnish a description of said ditch or drain, or of the beginning point or the route along which it was proposed to be constructed, or the terminus thereof, as required by law.

"Second. No notice of the filing of said petition and of the appointment of viewers, to make a preliminary view of said ditch or drain was given by publication prior to the filing of the viewers' report therein, as required by law.

"Third. The beginning point, route and terminus of said ditch or drain, as ordered to be established, by the order and judgment of said county court aforesaid, differed and varied from the beginning point, route and terminus of such ditch or drain, as attempted to be described or set forth in the petition, which was the basis of such proceeding, and said county court was without jurisdiction to order and direct the construction of said ditch or drain for that reason.

"Fourth. No notice of the coming in of the report of the viewers and of the time when the same would be heard and of the time for the final hearing of said matter in said county court, was given to the owners of the land which it was proposed to appropriate for the location of said ditch or drain, and no such notice was given to the owners of the land whose property is

assessed by said supposed judgment for the payment of the expenses of said ditch or drain.

"Wherefore, said Western Tie & Timber Company prays that said judgment of the county court, establishing said drainage district, may be set aside and for naught held, for want of jurisdiction in said court."

This plea, as well as all the issues on the appeal, passed into final judgment, upon a hearing and trial had before the circuit court, at the March Term, 1906, on March 27, 1906, the judgment of the court being as follows:

"Now at this time come the parties in the above entitled cause, by their respective attorneys, and said cause having been heretofore submitted to the court upon the pleadings and proof adduced, and the court having heard the evidence and arguments of counsel, and being now fully advised in the premises, doth find that due legal notice, according to law, has been given to all parties interested in the lands in said drainage district, and the time and place of said hearing on said petition, and the report of the viewers; and that the assessments of the lands in said drainage district were fair and just.

"It is therefore ordered, adjudged and decreed by the court that the judgment and order of the county court of Ripley county, directing said ditch and improvements as specified in the report of the viewers of said drainage district to be constructed and established according to law, and bonds issued and sold for the construction of said drainage district, and all improvements as specified in the viewers' report thereof, be and the same is in all things confirmed."

After taking the proper preliminary steps, appellant duly appealed the cause to this court.

I. The first question presented by this record for determination is, will an appeal lie from the judgment of the county court incorporating a drainage district

under article 4 of chapter 122, Revised Statutes 1899, to the circuit court?

This same question was presented to this court in the case of Drainage District v. Railroad, 216 Mo. 709. That was a proceeding instituted, under the same article, in the county court of Chariton county, for the purpose of organizing a similar district. What was there said by our distinguished associate will better answer the question here presented than I could hope to do; and for that reason I here quote his observations in full:

"A right of appeal is one given by statute and in order that a party may avail himself of the right conferred he must conform to the requirements of the enabling statute. The General Assembly might, if it had seen fit to do so, have made the judgment of the county court in such case final and allowed no appeal, in which event the judgment could be attacked only either directly for fraud, or collaterally on the ground that it was void on its face. In this kind of proceeding the statute gives an appeal, but it prescribes the method to be pursued in taking the appeal and limits the questions that may be litigated in the appellate court. The General Assembly has been careful to express the limitations on this right, and also on the scope of the litigation after the appeal is taken, saying who may appeal, when and how the appeal may be taken, and what questions may be heard by the circuit court when the cause reaches that court. When we notice the changes or amendments that have been made in the statutes on these points, we see that the General Assembly has acted with deliberation.

"Section 8292, as it appears in Revised Statutes 1899, says: 'Any person or corporation party to proceedings may, . . . file exceptions to the apportionment, or to any claim for compensation or damages at any time before the day set for the hearing of said report by the court.' It then provides that the court

may hear the evidence and pass judgment on the exceptions. Then it says: 'Any person or corporation may appeal from the order of the court, and upon such appeal may determine either of the following questions: First, whether such improvement will be conducive to public health, convenience or welfare, or the location of any part changed; second, whether the route is practicable; third, whether compensation has been allowed for property appropriated; fourth, whether proper damages have been allowed for property affected by the improvements. The appellant shall pray an appeal and file a motion, in writing, specifying therein the matters appealed from, which motion shall be filed and recorded.' We will note that it is there specified who may file exceptions, to what the exceptions may relate, who may appeal from the order sustaining or overruling the exceptions, how the appeal may be taken and what questions may be heard on the appeal. In 1903 that section was amended so as to reduce the questions that might be litigated on appeal from four to two: 'First, whether compensation has been allowed for property appropriated; second, whether proper damages have been allowed for property affected by the improvements.' The amendment also provided that the appeal should not stay the proceedings in the county court or delay the work, but the proceeding subsequent to taking the appeal should affect only 'the rights and interests of the property located in such drainage district owned by appellant or appellants.' [Laws 1903, p. 235.]

"In 1905 the section was again amended, so that instead of the persons or corporations who might file exceptions and who might appeal from the ruling of the court thereon as specified in the original section and repeated in the amendment of 1903, it was said: 'Any person whose lands are affected by the proposed improvement' may file exceptions, etc., and appeal from the ruling of the county court thereon. The Act of

1905 corrects also the awkward wording of the last sentence of the amendment of 1903, so as to read: 'and the subsequent proceedings in the circuit court shall affect only the rights and interests of the appellant in property located in such drainage district.' [Laws 1905, p. 185.]  This section 8292, Rev. Stat. 1899, rewritten so as to embody the amendments above noted, appears as section 8292 in Mo. Ann. Stat., vol. 4, pages 3922-3, and as it there appears is now the law.

"Thus we see that the General Assembly has with great particularity limited the subjects to which the exceptions may relate, has limited the right of appeal to the ruling of the court on those exceptions and limited the questions to be considered by the circuit court on the appeal."

After the Acts of 1903 and 1905, mentioned in said opinion, became operative, they became applicable to all subsequent proceedings had in the case at bar. [State ex rel. v. Taylor, 224 Mo. 393.]

We are, therefore, of the opinion that appellant was entitled to an appeal from the order of the county court of Ripley county, organizing said drainage district, etc.; but by the express terms of said acts, the authority and jurisdiction of the circuit court was limited to the trial and determination of "either one or both of the following questions:

"First, whether compensation has been allowed for property appropriated; and, second, whether proper damages have been allowed for property prejudicially affected by the improvements."

In passing, we might add that in violation of these plain statutory provisions, the circuit court did not confine the trial had therein to the two questions before mentioned, but proceeded and tried the entire case *de novo,* and confirmed the judgment of the county court in all things; but that was an error invited by appellant, and of which it cannot complain.

II. By reading this record and the assignment of errors, it will be seen that counsel for appellant challenge the validity of the proceedings of the county court had in this cause for numerous reasons, which may be briefly stated as follows: first, the notice given to the owners of the land to be affected by the proposed improvements was insufficient to bring them into court, or to confer jurisdiction of the court over them or the subject-matter of the suit; second, that the beginning, course and terminus of the proposed ditch was not properly designated in the original petition filed in the county court; third, that the petitioners had no legal right to file an amended petition in the cause; fourth, that the attorney for petitioners had no legal authority to sign their names to the amended petition; fifth, that neither the viewers nor the county court had any lawful power or authority to change the beginning, course or terminus of the proposed ditch, as was done in this case; sixth, that said drainage district had no power to exercise the right of eminent domain in securing a right of way for the proposed ditch; seventh, that said ditch would not drain all the lands to be affected by said proposed ditch, and especially that of appellant; eighth, that the assessments of benefits made against the lands of appellant in the south half of section 14, of the south half of section 13, all of section 26, all of section 27, township 22, range 4, of said county, were too high; and, ninth, that the proposed ditch had no adequate outlet through which the waters of the district could drain from the lands embraced therein.

Counsel also complain of the action of the circuit court as to the admission and rejection of evidence; and that the latter court in the trial of the cause erred in imposing the burden of proof upon appellant.

It is sufficient to say in regard to all of those matters that this court has only appellate jurisdiction in this class of cases, and it necessarily follows that it

has no greater authority or power to review and pass upon the proceedings of the county court than the circuit court possessed; and by reading the list of questions before presented for our determination, in the light of said section 8292, as amended by said Acts of 1903 and 1905, it will be readily seen that there is not a single question there stated which was cognizable, on appeal, by the circuit court, consequently there is no question properly presented here for our consideration; and that matter is not altered by the fact that the circuit court proceeded to try the case *de novo* upon its reaching that court. Its action in that regard was *coram non judice*.

III. It will also be seen by reading the affidavit and application for an appeal, filed by appellant, from the judgment of the county court organizing said district and ordering said improvements made, that no complaint whatever was made therein as to the compensation awarded or to the inadequacy thereof for the property proposed to be appropriated for the purposes of said district, nor that the damages assessed against appellants' property was inadequate compensation for the injury, if any, that would be done the same in consequence of said proposed improvements.

Said section 8292, as amended by the Act of 1903, Laws 1903, page 235, required those matters to be stated therein, and it was prerequisite to the attachment of the jurisdiction of the circuit court that one or both of said matters be stated; and having failed to state either of them, the circuit court acquired no jurisdiction over the cause.

We are, therefore, of the opinion that the judgment of the circuit court affirming that of the county court should be affirmed. [Drainage District v. Railroad, supra, l. c. 721.] It is so ordered.

All concur.