OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1911.

*(Continued from Volume 236)*

## WESTERN TIE & TIMBER COMPANY, Appellant, v. JOHN A. PULLIAM et al.

Division Two, July 15, 1911.

1. DRAINAGE DISTRICT: Former Trial at Law: Injunction: Res Adjudicata. Where in a proceeding in the county court to organize a drainage district, assess benefits, let contracts to construct drainage ditches and issue bonds, a landowner appeared, contested the proceedings upon the merits and suffered defeat, the merits of that case cannot be litigated anew by a suit in equity to enjoin the issuance of the bonds, the letting of contracts and the assessment of benefits, and the landowner, who had his day in court, is bound by the decision of the county court on all questions which were raised or could properly have been raised in that tribunal, and as to all such questions the matter is *res adjudicata*.

2. ————: ————: Jurisdiction of Parties: Judicially Determined: Collateral Attack. A landowner is precluded in a collateral attack, by injunction, upon the judgment of a county court organizing a drainage district, from contending that certain landowners were not properly summoned or served with process, where the county court made an order reciting that

Tie & Timber Co. v. Pulliam.

all landowners had been notified. The statute authorizes the county court to find whether due notice has been given, and it was for it to determine the sufficiency of the proof, and having judicially determined the matter its adjudication thereof is not vulnerable to attack in a collateral proceeding.

3. ———: Sale of Bonds: Injunction. Where the bonds of the drainage district have been sold and delivered, the court will not consider, in an injunction suit to enjoin the issuance of the bonds, the question of whether the issuance of the bonds was valid.

Appeal from Ripley Circuit Court.—*Hon. Jesse C. Sheppard,* Judge.

AFFIRMED.

*Charles O. Barth* and *Block & Sullivan* for appellant.

(1) The proceedings for the organization of this drainage district are controlled by the drainage law in force at the time; the subsequent transactions, by the law then in force. State ex rel. v. Taylor, 224 Mo. 463. (2) Under the law in force when these proceedings were had, personal service upon landowners resident in the county was required. R. S. 1899, sec. 8286. (3) The affidavit filed was not sufficient to authorize an order of publication to landowners not residents of the county. R. S. 1899, sec. 8286; Harness v. Cravens, 126 Mo. 247; Schell v. Leland, 45 Mo. 292; Tooker v. Leake, 146 Mo. 341; Crossland v. Admire, 149 Mo. 656; Parker v. Burton, 172 Mo. 91; Cummings v. Brown, 181 Mo. 717; Van Natta v. Real Estate Co., 221 Mo. 379; Wright v. Hink, 193 Mo. 132. (4) Jurisdiction of infant landowners could not be acquired by service upon their guardians. Hendricks v. McLean, 18 Mo. 37; Smith v. Davis, 27 Mo. 300; Baumgartner v. Guessfield, 38 Mo. 41; Railroad v. Campbell, 62 Mo. 588; Campbell v. Light Co., 84 Mo. 367; Fischer v. Siekmann, 125 Mo. 176. (5)

Without due service of process upon those whose lands are to be assessed, the county court had no jurisdictions to proceed to judgment organizing the district. Eaton v. St. Charles, 8 Mo. App. 177, 77 Mo. 493; State ex rel. v. Wall, 153 Mo. 222; Whitely v. County, 73 Mo. 30; Anderson v. Pemberton, 89 Mo. 66; In re Avenue, 121 Mo. 105; Names v. Comrs., 30 Mich. 490; McKee v. Hull, 69 Wis. 662; State v. Lyon, 73 Wis. 601; Fraser v. Trelawney, 129 Wis. 377. (6) Without proper service of process upon those whose lands were to be taken for a right of way, the county court had no jurisdiction to organize the district or establish the drain. Williams v. Kirby, 169 Mo. 628; In re Hill, 200 Mo. 643; Anderson v. Pemberton, 89 Mo. 66; Wright v. Wilson, 95 Ind. 412. (7) Upon the petition filed, the county court had no jurisdiction to order the construction of the drain which it has ordered. R. S. 1899, secs. 8279, 8280, 8281, 8290, 8291; In re Essex Avenue, 121 Mo. 105; Lagar v. County, 100 Minn. 85; Jurries v. Virgens, 104 Minn. 75. (8) The county court was without power to issue and sell bonds of this alleged drainage district. R. S. 1899, sec. 8279; R. S. 1909, sec. 5579; R. S. 1899, sec. 8998; R. S. 1909, sec. 5603; State ex rel. v. Taylor, 224 Mo. 464; State ex rel. v. County, 46 Mo. 231; Steines v. County, 48 Mo. 177; Thornburg v. School, 175 Mo. 23; Evans v. McFarland, 186 Mo. 720. (9) The amended petition was an abandonment of the original. Hawkins v. Massie, 62 Mo. 553; Bobb v. Bobb, 89 Mo. 418; Ingwerson v. Railroad, 205 Mo. 335. (10) The county court was without power to damage appellant's lands by this proposed drain, to be constructed without any outlet for the water. Constitution, art. 2, sec. 21; R. S. 1899, sec. 8285; Jurries v. Virgens, 104 Minn. 75. (11) Appellant was entited to relief by injunction. State ex rel. v. Taylor, 224 Mo. 47; Tie Co. v. District, 226 Mo. 420; R. S. 1909, sec. 2534; Casby v. Thompson, 42 Mo. 136; Bank v. Kercheval,

65 Mo. 688; Towne v. Bowers, 81 Mo. 495; Turner v. Stewart, 78 Mo. 490; Overall v. Ruenzi, 67 Mo. 207; Society v. Hudson, 85 Mo. 32; Leslie v. St. Louis, 47 Mo. 479; Verdin v. St. Louis, 131 Mo. 74; State ex rel. v. County, 51 Mo. 370; Newmeyer v. Railroad, 52 Mo. 81; Richardson v. McReynolds, 114 Mo. 641; Jones v. Williams, 139 Mo. 37; McPike v. West, 71 Mo. 199; Monroe v. Crawford, 163 Mo. 181; Spurlock v. Dornan, 182 Mo. 242; Const., art. 2, sec. 21; Holmes v. Kansas City, 209 Mo. 530; Fraser v. Mulaney, 129 Wis. 387; Ruhland v. Jones, 55 Wis. 673; Commission v. Winn, 53 So. 778; Belstonow v. Pierce, 101 Minn. 274; Lager v. County, 100 Minn. 85; Jurries v. Virgens, 104 Minn. 71; Johnson v. Clontarf, 98 Minn. 287; Campbell v. Youngstown, 114 N. W. 416; Railroad v. Dudgeon, 64 Ark. 108; Bruggink v. Thomas, 125 Mich. 9.

*Thomas F. Lane* for respondents.

(1) The appellant was not entitled to injunctive relief, either on the face of its bill, or under the facts in evidence. Therefore, the action of the court below dismissing appellants' petition was right. 1 High on Injunctions (4 Ed.), secs. 7, 78, 165, 166. (2) Even though the judgment rendered by the court at law be void for want of jurisdiction equity will not enjoin, but will leave the parties to their remedy at law. 1 High on Injunctions (4 Ed.), sec. 125; Railroad v. Reynolds, 89 Mo. 146; Stockton v. Ransom, 60 Mo. 535; Railroad v. Lowder, 138 Mo. 533; State ex rel. v. Brown, 172 Mo. 381; Railroad v. Hosreth, 144 Mo. 149; Henman v. Westheimer, 110 Mo. App. 194. (3) Injunction will not lie when there is an adequate remedy at law. McPike v. Few, 48 Mo. 525; Stockton v. Ransom, 60 Mo. 535. (4) Courts of equity in exercising their jurisdiction in restraint of an action at law, exercise it, not over the court of law, but upon

the parties litigant therein. And a court of equity is devoid of jurisdiction to grant an injunction against the judge of another court to restrain him from acting in or making orders in a particular cause. Every judge (*pro hac vice* the court) is supreme and independent in his own sphere, and cannot be restrained in the discharge of his functions by the process of injunction. High on Injunctions (4 Ed.), sec. 46; Pom. Eq. Jur. (3 Ed.), secs. 1360, 1361, 1365; 16 Am. and Eng. Ency. Law 365. (5) The issues presented in the case at bar have been definitely settled by a previous judicial decision (Tie & Timber Co. v. District, 226 Mo. 420); therefore the doctrine of *res judicata* applies in this case. Womach v. St. Joseph, 201 Mo. 476; Erwin v. Henry, 5 Mo. 469; State v. Wear, 145 Mo. 189; Winham v. Kline, 77 Mo. App. 36; Brown v. Railroad, 96 Mo. App. 164; Miller v. Bennerker, 46 Mo. 194; Dobbs v. Ins. Co., 72 Mo. 191; Chouteau v. Gibson, 76 Mo. 38, 111 U. S. 200; Murphy v. De-France, 101 Mo. 159; Carey v. West, 165 Mo. 455; Caldwell v. White, 77 Mo. 473; Pugh v. Williamson, 61 Mo. App. 169; Wilson v. Brighton, 50 Mo. 17; Glosner v. Weisberg, 43 Mo. App. 214; Young v. Byrd, 124 Mo. 590; Hamilton v. McLean, 169 Mo. 51. (6) In passing on the plea of *res adjudicata,* the question is not whether the court decided the point right or wrong; but the question is, did it decide, and is the decision final? Chouteau v. Gibson, 76 Mo. 38, 111 U. S. 200; Murphy v. De France, 101 Mo. 159. (7) The doctrine of *res adjudicata* applies as well to judgments of courts of last resort as to those of *nisi prius* courts. If the same subject-matter comes in question in a second action before a court of last resort, it is bound by its own former decision. Chouteau v. Gibson, 76 Mo. 51; Carey v. West, 165 Mo. 455. (8) The county court had exclusive jurisdiction to establish and organize the Naylor Drainage District under the statute; it had jurisdiction therefore of the subject-

matter; it also had jurisdiction of the landowners in said district. Art. 4, chap. 122, R. S. 1899; Western T. & T. Co. v. District, 226 Mo. 420; State ex rel. v. Taylor, 224 Mo. 393. (9) The failure to notify one or more landowners of the proceedings to establish a ditch, does not vitiate the proceedings. Carr v. Boone, 108 Ind. 241; Poundstone v. Baldwin, 145 Ind. 139; Grimes v. Coe, 102 Ind. 406. (10) The amendment of the petition filed in the county court was proper; the county court could have changed the location of the entire ditch, by amending the report of the viewers. Sec. 8287, R. S. 1899; State ex rel. v. Taylor, 224 Mo. 393; State v. Court, 42 Wash. 491. (11) Injunction will not lie to restrain the letting of a contract for the construction of a ditch, unless the proceedings are void on their face under the statutes. Young v. Sellers, 106 Ind. 101; 6 Cur. Law, p. 1452, sec. 3; Ross v. Wright, 104 N. W. 506; Calker v. Spraker, 26 Ill. App. 159; Leonard v. Sparks, 117 Mo. 103. (12) In the absence of fraud, the findings of the county court that the lands will be benefited, or that the drain is necessary, or practical, is not subject to review by appeal, or in subsequent proceedings. Alstad v. Sims, 109 N. W. 6; Riter v. Drainage Dist. 94 S. W. 711; District v. County, 89 Pac. 993; Heman v. Allen, 156 Mo. 534, 181 U. S. 402; State ex rel. v. Stewart, 74 Wis. 620. (13) The court had jurisdiction of the defendant (appellant) in the original proceedings to establish the ditch; it found as a fact, and judicially determined that the notice under the law was sufficient. Under the law appellant is precluded now from attacking the judgment for lack of notice. Leonard v. Sparks, 117 Mo. 103; McMullin v. State ex rel., 105 Ind. 334; State ex rel. v. County, 135 Mo. 542. (14) The question of the existence of all jurisdictional facts can only be determined by the court exercising it lawful functions under the law; the drainage act left it for the court to find and determine

when legal notice had been given; that fact was found and is recited in the judgment of the court; it is conclusive upon appellant in this case. State ex rel. v. County, 135 Mo. 542; Leonard v. Sparks, 117 Mo. 103; State ex rel. v. Taylor, 224 Mo. 393.

FERRISS, J.—Suit by the Western Tie & Timber Company, as plaintiff, to enjoin the defendants, judges of the county court of Ripley county, from proceeding with the construction of a drain or artificial water course in Ripley county, and also to enjoin the issuing of certain bonds for the construction of the same, and to prevent assessments and levies against the lands of the plaintiff to pay for the construction of such drain, or to meet or retire bonds issued to pay for same.

The original petition was filed April 18, 1910, in the circuit court of Ripley county. An amended petition was filed August 26, 1910. Such amended petition charges that the plaintiff is an Arkansas corporation and the owner of a large amount of lands in said county; that at the November term, 1902, of the county court of Ripley county, there was presented a petition praying for the establishment of a drain or artificial watercourse, which petition described the proposed location and route of such drain or ditch, having an approximate length of about nine miles, and prayed for the issuing of bonds to pay for same; that on the 29th day of December, 1902, there was filed in said proceeding an amended petition which abandoned the prayer of the original petition for the issuance of bonds; that on the 6th day of February, 1903, on the pretended authority of said petition, the county court ordered the establishment of a drainage district to be known as Naylor Drainage District No. 1, whose beginning point and terminus were other and different from those mentioned in the original petition, but following the same general course and of the same

length; that said county court, by its order establishing said drainage district, attempted to provide that bonds should be issued and sold to pay for the construction of said drain; and thereafter, on August 1, 1904, the county court entered its pretended judgment, including plaintiff's lands in said drainage district, and assessing benefits against said lands in sums exceeding in the aggregate $10,000. The petition then proceeds as follows:

"And the plaintiff alleges that said pretended judgments of said county court, establishing said drainage district and providing for the construction of said drain, and making the assessments aforesaid, are void for the reason that the petition filed with the county court did not pray for, or authorize, the establishment of the drain which said county court actually attempted to establish as aforesaid; and also because said county court, when it entered said pretended judgments establishing said drainage district, providing for the construction of said drain, and making said assessment, was without jurisdiction of the land-owners whose lands were to be taken for the location of said drain or watercourse, as well as the land-owners whose lands were to be assessed for said improvements.

"And the plaintiff further avers that the terminus of said drain as ordered and directed to be established by said court by said pretended orders and judgments, is without a natural outlet for the water, and that no artificial outlet is provided; that plaintiff's lands lie near the terminus, and are of a lower level than other lands through which it is proposed to construct said drain, and, instead of being benefited by said drain, will be overflowed and damaged and rendered of less value by its construction; and the plaintiff alleges that no compensation has been made or provided in behalf of the plaintiff for such damage to its lands.

"And plaintiff further avers that other lands included within said drainage district will be greatly benefited and the value thereof largely enhanced by the construction of said drain, but plaintiff says that plaintiff's said lands, hereinabove described, although they will be damaged by the construction of said drain and will receive no benefit whatever therefrom, are assessed for benefits under the pretended judgment of August 1, 1904, in the same amount per acre as are assessed against said other lands so included in said drainage district, and which will be benefited and greatly enhanced in value by the construction of said drain.

"The plaintiffs alleges that the defendants now propose to execute said void judgments, to let contracts for the construction of said drain or watercourse, and to cause the same to be constructed, to issue and sell bonds to secure funds to pay for the same, and to make levies and assessments against the lands of the plaintiff to pay for the construction of said drain and to pay and redeem said bonds, and will proceed to do all this unless restrained and enjoined from so doing.

"The plaintiff alleges that under the statutes regulating appeals from the county court in drainage matters it is without remedy by appeal from these pretended orders and judgments of the county court aforesaid, and has no remedy with reference thereto save only by the interposition of a court of equity.

"Wherefore the plaintiff prays that the defendants herein, as judges of the county court aforesaid, and their successors in office, be restrained and enjoined from executing, or attempting to execute, said pretended orders and judgments; from contracting or attempting to contract for the construction of said drain or artificial watercourse; for making, issuing, or disposing of, or attempting to make, issue or dispose of bonds for the construction of the same; and

from making or attempting to make, any assessments or levies against the land of the plaintiff to pay for the construction of said drain or watercourse, or to meet or retire bonds issued to pay for the same; and for such other and further relief as to the court may seem meet and proper in the premises.''

The answer of defendants, filed December 14, 1910, sets out at great length, and specifically, all the proceedings in the county court, the circuit court and this court, concerning the establishment of the drainage district, together with a general denial of every allegation in plaintiff's petition not specifically admitted.

The facts set up in the answer substantially appear in the opinion of the court in the case of Tie & Timber Company v. Drainage Co., 226 Mo. 420. Owing to their great length, the facts will not be repeated here in detail, but reference can be had to the above mentioned opinion for the detailed facts. It is sufficient to say that the facts set up in defendants' answer show that proceedings were had, under the statute, in the county court to establish this drainage district. A petition was filed by property-owners, as provided by law; viewers were appointed, whose report recommended a change in the beginning and terminus of the proposed ditch, and also a change in its route, whereupon an amended petition was filed by the property-owners conforming to the route as changed by the viewers. New notice was given as upon an original proceeding. An order was made by the court confirming the report of the viewers; notice by publication given to certain non-resident landowners; summonses issued to resident landowners, as the law at that time required to be done. The cause was continued from time to time until the first day of August, 1904, when the plaintiff, Western Tie & Timber Company, appeared in the county court, and filed exceptions, which were heard and overruled; an

appeal was taken by plaintiff to the circuit court, where the cause was heard *de novo,* and decided adversely to plaintiff; then an appeal to this court, resulting in said opinion of this court, where the judgments of the county and circuit courts were affirmed.

The answer further alleges that every issue raised in this case has been litigated and determined adversely to plaintiff in the former case above referred to, and that such former decision is *res adjudicata.* The answer further alleges that all of the orders and decisions of the county court were in strict conformity to law; that said county court, in May, 1910, after the affirmance by the Supreme Court of the proceedings in the county court, let the contract for the construction of said drain or ditch in compliance with law; that a contract for the construction of said drain was duly entered into by a construction company, bond given and approved as required by law; that afterwards, on the——day of May, 1910, in pursuance to said final judgment in said case, the county court ordered its treasurer to sell to A. G. Edwards & Sons, of the city of St. Louis, the bonds of said drainage district to pay for said improvement.

The reply was a general denial.

On September 21, 1910, the circuit court entered the following order:

"On this 21st day of September, 1910, came the parties hereto, and this cause is heard and submitted to the court, and the court being of opinion that if the plaintiff is entitled to relief herein, it has an adequate remedy at law, and is therefore not entitled to relief in equity; it is, therefore, ordered, considered and adjudged that the petition be dismissed, without prejudice to proceedings at law, and that defendants go hence without day and recover of the plaintiff their costs herein, for which let execution issue."

In due time this appeal was perfected.

The bill of exceptions shows testimony introduced in this case as follows:

After an objection by the defendants to any testimony upon the ground that the petition did not state facts to constitute a cause of action, and because upon the face of the bill plaintiff was not entitled to equitable relief, the evidence was received subject to the objection.

There was first introduced the original petition, filed November 10, 1902, in the drainage proceeding, which was in the usual form, stating the commencement, general route and terminus of the proposed ditch, and praying for an issue of bonds; next, the order of the court, made November 11, 1902, appointing viewers and an engineer, which order was in the usual form, and then the notice of the proceeding by publication, which was in due and proper form. Plaintiff then put in evidence the amended petition, report of the viewers and the order of the county court made thereon, all on December 29, 1903, as follows: First, the amended petition, which changes the commencement of the ditch to a point about a mile distant from the one described in the original petition, following the same general route, and ending at a point about a mile distant from the terminus mentioned in the original petition, and also making some other immaterial changes, but omitting any prayer for the issuing of bonds; next, the report of the viewers, who had been appointed under the original petition, and whose report changed the location of the drain as above stated, conforming to the description in the amended petition; then the notice by publication of the pendency of this amended petition, the appointment of viewers and engineer, and description of the route. The case was then continued to the next term of court. Next were introduced copy of the notice and order published as required by law; the report of the viewers referred to, recommending the construction

of the drain along the route described in the amended petition, and reporting that the proposed improvement as so located would be conducive to the public health and welfare, that the route was practical and the proposed outlet sufficient. Then was put in evidence the order of the county court at the February term, 1903, approving said report, and directing the viewers and engineer to make a final survey, location, estimate and apportionment of benefits, which order was in the usual form. Next followed the final report of the viewers, giving full details of the construction, also of the assessment of benefits. Then followed the order of the clerk in vacation, setting the final hearing of the final report for February 1, 1904. This hearing was continued to March 21, 1904, on a finding that landowners had not been notified. Plaintiff next offered in evidence the affidavit of one D. B. Young, filed March 2, 1904, as a basis for the order of publication. This was objected to by defendants on the ground that plaintiff, having entered its appearance in the county court, could raise no question as to whether proper service had been had on other parties. The affidavit stated that the affiant was interested in the drainage of the lands in said Naylor Drainage District No. 1; that "he is creditably informed, and verily believes" that several parties named in the affidavit, including the plaintiff, "who are owners of lots or parcels of land or real estate affected by such proposed improvement are without the county of Ripley in which said work is located, and have no agent or tenant resident in said county on whom proper service of a notice of the filing of the petition and report of the viewers in the premises could be had." Then followed the order of publication to non-resident landowners, based upon the foregoing affidavit, which order was in the usual and proper form. Plaintiff next offered in evidence notice issued to resident landowners. Counsel for the plaintiff made the following

statement: "I suppose it will be admitted that the files which we have here constitute all the notices that the clerk has." Mr. Land, counsel for defendants, made the following admission: "It is admitted that the county clerk will testify that the notices to land-owners which are about to be offered by the plaintiff are all of the notices to landowners in the proceeding that he has in his custody, or that he knows anything about." Objection was made by the defendants to the offer of the returns on the ground that the notices and returns were immaterial, as none of the parties were making any objection, nor ever made any objection to the ditch, and that if the county court did not acquire jurisdiction over the parties mentioned in the summonses, this fact would not affect the jurisdiction of the county court over the plaintiff. The notice to the landowners was in the usual form, summoning them to appear before the county court on the 21st day of March, 1904, to show cause why the report of the viewers should not be approved. It was shown that in a number of cases the notices contained no return, and nothing to show any service or attempted service, and that others of the notices showed irregular service, as follows: One of those commanded the sheriff to summon J. A. Woodward, guardian of "Harris heirs," and was returned served by the sheriff upon Woodward only. Another issue directing service upon St. Louis, Memphis & Southeastern Railway Company, and the only return of service was "by reading it to the within named party." Another, for the St. Louis Iron Mountain & Southern Railway Company, was returned served by "delivering copy to C. Dachwald to the within named party." The summons for Wm. Lyrd was served "by sending copy to within named party." That for B. W. Stayton was executed "by leaving a copy of the same at the usual place of abode of the within named party." On the summons to one S. F. Hess the sheriff wrote, "Dead

and non-resident," and returned it to the clerk. On the summons for Emmett Bounds the sheriff wrote "non-resident," and returned it. On the summons for C. M. Byrd, C. V. Byrd, Pearl Byrd, and C. N. Cash, guardian, the sheriff made no return.

There was an order by the county court on March 21, 1904, continuing the matter to May 2, 1904, on a finding that non-resident landowners had not been notified, but ordering no further process. Several subsequent orders for continuances were offered in evidence, in none of which were there any directions for further service. The last of these continuances was to August 1, 1904. On that day the county court made an order reciting that all landowners had been duly notified, and entered a final judgment directing the construction of the drain and the assessment of the lands benefited as reported by the viewers, and over-ruled the exceptions of the Western Tie & Timber Company, which exceptions were not put in evidence, but which are stated in the answer of the defendants. Plaintiff then put in evidence the order of the county court, entered at the February term, 1910, directing the engineer to let the contract for the construction of the drain, after advertising by the clerk in the manner pointed out in the statute, and also the following order:

"It is by the court on this day further ordered, that upon the sale, and the letting of the contract for the construction of the ditch and improvement, as aforesaid that bonds in the denomination of five hundred dollars, or multiples thereof, be issued against said drainage district and sold, or paid to the contractor or contractors in lieu of cash, in a sum not to exceed twenty-five per centum above the estimated cost of said ditch and improvement, including all expenses of location and litigation. Said bonds to become due and mature annually after two years from date, and to bear interest not to exceed the rate of six per

cent per annum, and payable semi-annually, at the county treasurer's office of Ripley county, Missouri. Said bonds shall mature and fall due in eighteen equal amounts, as near as the same may be practical, commencing ten years from the date of issue, so that none of said bonds shall run or draw interest for a term not to exceed twenty years, as provided by law. Said bonds shall be sold at public auction to the highest bidder by the county treasurer of Ripley county, without expense to the said county, and notice of the sale of said bonds shall be given by publication in some newspaper printed and published in Doniphan, Ripley county, Missouri; no bonds shall be sold for less than par value, and said bonds shall fully set out and specify on their face the purposes for which they are issued.''

Plaintiff then offered oral testimony tending to prove that the outlet of the drain was insufficient, and that the construction of the drain as proposed would result in bringing additional water on the lands of plaintiff.

Defendants offered in evidence the following:

1. The record of publication of notice to landowners of the original petition, and appointment of viewers.

2. The record of publication on the amended petition, and the viewers' report, above referred to.

3. The preliminary report of the viewers, above referred to.

4. The order approving this report at the February term, 1903, above abstracted in plaintiff's case.

5. The affidavit and qualification of the viewers and engineer, as required by statute.

6. The final report of the viewers and engineer, above abstracted in plaintiff's case.

7. The various orders of continuances of the matter in the county court, and the final order of August, 1904.

8. The orders for letting contract and sale of bonds, above set forth, with the publication thereunder, giving notice of the letting, as required by the statute.

9. The report of the engineer, showing the letting of the contract, of date May 3, 1910; also the contract itself, and the bond of the contractor for doing the work, and the approval of the report, contract and bond by the county court, under date May 3, 1910.

10. A further order of the county court for the sale of the bonds, made on the 6th day of May, 1910.

11. A notice of the sale of bonds for the construction of the drain.

12. A subsequent order of the county court approving an offer for the bonds under this sale.

A comparison of the names of the parties against whom summonses were issued in the drainage proceeding with the plat on file showing the owners of the lands traversed by the proposed ditch, shows that the summonses offered in evidence and returned as not served were directed to two property-owners whose land lay in the line of the proposed ditch, and would be taken for the construction of the same; also that two or three of the parties who owned land which should be taken for the ditch were attempted to be brought into court by the order of publication.

It is contended by the plaintiff that the order of publication was invalid because based on an affidavit which plaintiff claims did not comply with the law, in that the affidavit states that the parties mentioned are without the county, but does not state that their residence is without the county. Plaintiff contends that the county court acquired no jurisdiction of the drainage proceedings because of the failure to get service upon certain of the landowners, and particularly because of the failure to get service upon all of the persons who owned land which would actually be taken

237 Sup.—2

in the construction of the ditch. Plaintiff further contends that although in court itself, it had a right to object to the jurisdiction if other parties whose land was taken for the ditch were not in court also, upon the theory that the ditch being continuous it could not be constructed throughout unless the court had jurisdiction of all the parties whose lands were taken for such construction.

The record does not show whether or not all of the parties in interest appeared in court. There is no evidence upon this subject excepting the summonses and returns which were read in evidence, and the affidavit and notice of publication in the record.

The exceptions filed by plaintiff in the drainage proceedings and the subsequent steps taken by way of appeal were not shown in evidence although set up in the answer. These, however, fully appear in the case of Tie & Timber Co. v. Drainage Co., 226 Mo. 420. There is no question but that the case referred to involves the transactions which are the basis of this suit, and which, we think, may properly be considered in the disposition of this case.

I. The plaintiff in this case is attempting to relitigate in a court of equity questions finally adjudged by the county court, and is also attempting to enjoin further proceedings by the county court upon the ground that the orders and judgments hertofore made and rendered by the county court are void for want of jurisdiction because all the parties in interest were not brought into court.

Plaintiff had its day in court, and contested the proceedings upon the merits, and suffered defeat. We think it clear that so far as the merits of the case are concerned they cannot be litigated anew, and that plaintiff, having had its day in court, is bound by the decision of the county court on all questions which were raised or could properly be raised in that tribunal. The matter is *res judicata*.

But plaintiff is now seeking to enjoin proceedings under a judgment which it claims is void because of want of jurisdiction on account of failure to properly notify property owners. Whether this plaintiff can object that other property-owners were not duly served we need not decide because, in our opinion, the record of the county court precludes such objection on the part of the plaintiff. The county court, by its order entered August 1, 1904, found that all of the land-owners had been duly notified. Section 8287, Revised Statutes 1899, authorizes and directs the county court to find whether due notice has been given, and, if the court shall so find, to proceed to examine the report of the viewers, and confirm same if approved.

In the case of Lingo v. Burford, 112 Mo. 149, the question arose whether a recital of the county court record "that due notice had been given according to law" was sufficient in a collateral proceeding to show jurisdiction in the court, so far as it was essential to show notice. GANTT, J., speaking for the court, and citing several authorities, says: "That the county court was only authorized to entertain the proceeding to condemn plaintiff's land for the road, upon notice given as required by the statute, section 7797, is not to be questioned, but it is a well-settled principle that where the jurisdiction of an inferior court depends upon a fact which said court is required to ascertain and settle by its decision, its decision is conclusive as against a collateral attack. . . . The county court had original exclusive jurisdiction to hear and determine upon a proper petition and due notice, whether a new public road should be established over a route designated in the petition. The petition stated every fact necessary to give the court jurisdiction of the subject-matter. Twenty days' notice of this application was required. The statute required 'proof of notice having been given as required.' The county court was the tribunal authorized to hear and deter-

mine the sufficiency of the proof. It was not required by law to spread on its record the evidence by which it ascertained that notice had been given. It did find and spread on its record that 'notice had been given according to law.' This was a fact *in pais* to be established by evidence, and its power to proceed further in the case depended upon the giving or failure to give this notice. It judicially ascertained it was given, and we think that it is conclusive as against a collateral attack.''

· This opinion has been cited with approval in numerous decisions rendered by this court since that time. It is approved in terms in State ex rel. v. Wilson, 216 Mo. 215. In State ex rel. v. Taylor, 224 Mo. l. c. 461, Woodson, J., discussed this subject, and cited with the approval the holding of the Supreme Court of Indiana to the effect that whether there was or was not sufficient notice was a jurisdictional question to be determined by the commissioners, and that their finding could not be collaterally attacked unless the record affirmatively showed that no notice whatever was given. A valuable contribution to the law upon this subject is found in the opinion of Goode, J., in the case of Hadley v. Bernero, 103 Mo. App. 549, where, among other things, the court says: ''When a tribunal is clothed with jurisdiction of the class of actions to which a controversy belongs, and its right to adjudicate the controversy depends on certain facts which it must ascertain, and it makes an express finding on them, that decision becomes as much *res judicata* as the decision of any other issue, and the parties are precluded from reopening it afterwards, except by appeal or writ of error.''

In this case the county court found as a fact that due notice was given, and its record so shows. We must presume that the record made by that court is a true record. It was stated at the trial of this case, and not disputed, that no other property owner in-

terested objected to the drainage proceedings. Whether or not they entered their appearance does not appear, nor does it appear whether they were notified other than as appears by the summonses and returns offered in evidence in this case. For aught that appears in this record all other property owners interested may have entered their appearance or may have been notified; but whether they were or. not, we are constrained to .hold, in accordance with an unbroken line of decisions in this State, that the recital in the record of the county court that all parties' were duly notified, is conclusive in this collateral proceeding.

So far as the objections of plaintiff to the drainage proceedings, based upon the merits, are concerned, as stated above, the plaintiff had its day in court, and is bound by the decision of the county court on this question. An appeal was had to the circuit court, and from that court to this court, without avail. It was held by this court that all the proceedings in the circuit court were *coram non judice*. We held in effect that plaintiff had no right of appeal from the county court, save and except upon two propositions, neither of which are involved in that appeal.

II. Plaintiff also contends that the county court had no authority to order an issue of bonds to pay for the construction of the ditch; that when the property owners filed their amended petition they thereby abandoned their original petition, and all subsequent proceedings were upon the amended petition, as if no original petition had been filed;. that this amended petition did not ask for an issue of bonds.

On this question the record before us is not in satisfactory shape. Whether or not the bonds were actually issued we are unable to determine from what appears in the record. The amended petition in this case was filed August 26, 1910. It appears from the record that at the February term, 1910, the county court directed the engineer to let the contract for the

construction of the drain, and also ordered an issue of bonds to pay for the work, and further ordered said bonds to be sold at public auction. The record further shows that on May 3, 1910, the contract for the construction of the ditch was let, and the bond of the contractor doing the work approved. On May 6, 1910, the court made an order directing the sale of the bonds, and a subsequent order of the court approved an offer for the bonds under this sale. The order is not set out in the abstract, but we will assume that it supports the allegations in the answer of the defendants that said county court, through its treasurer, sold to A. G. Edwards & Sons, of St. Louis, the bonds of such drainage district for the sum of ———— dollars to pay for said improvement. Whether or not the ditch has been dug, or the bonds actually delivered, we do not know; but inasmuch as the contract was let on May 30, 1910, and the bonds were sold in May, 1910, and the amended petition in this case was filed in August, 1910, we must assume, in the absence of any information to the contrary, that the work proceeded under the contract, that the ditch was dug, and that the bonds were sold and delivered. There was no preliminary restraining order asked for or granted in this case to prevent the prosecution of the work and the sale of the bonds. It would seem that after the decision of this court was handed down (March 15, 1910) in the case of Tie & Timber Co. v. Drainage Co., supra, the county court assumed that the way was clear for the prosecution of the work, and proceeded accordingly. Assuming then, as we think we must, from what appears in the record, that the bonds have been sold and delivered, we are precluded from considering in this proceeding the question whether the issue of bonds was valid.

It follows from the foregoing that the judgment must be affirmed, and it is so ordered.

*Kennish, P. J.,* concurs, *Brown, J.,* in result.